ALBANY,
August, 1809.

Murray.
v.
Columbian
Ins. Company.

MURRAY *against* the COLUMBIAN INSURANCE
COMPANY.

THIS was an action of *assumpsit*, for money had and
received by the defendants to the plaintiff's use. The
defendants gave a *cognovit actionem*, for 1,900 dollars,
subject to the opinion of the court upon the following
case, agreed between the parties.

The plaintiff was owner of the ship *Egeria*, and had
insurances made, on the 9th *February*, 1808, by the defend-
ants, upon the *ship*, and upon the *freight* of all goods,
wares and merchandises, laden or to be laden on board
the said ship, on a voyage, " at and from *Calcutta*, with
liberty to touch at *Madras*, for trade, and to take in a
*part* of her cargo," beginning the said adventure " at
and from *Calcutta*, and to endure until her arrival at
*New-York*, valued at the sums insured respectively."

In *June*, 1807, the defendants had insured for the
plaintiff the same ship, on a voyage, at and from
*New-York* to *Madeira*, and at and from thence to *Cal-
cutta*, with leave to touch and trade at the *Cape of Good-
Hope*, and at *Madras*. The ship sailed from *New-York*,
arrived at *Madeira*, and sailed from thence, on the 29th
*August*, 1807, touched at the *Cape of Good-Hope*, and
from thence went to *Madras*, where she arrived on the
5th day of *May*, 1808, and sailed from thence on the
15th day of *July*, 1808, direct to *New-York*, without
going to *Calcutta*.

*Pendleton*, for the plaintiff. The adventure was to begin
at *Calcutta*, and continue at and from thence to *New-York*.
The vessel did not proceed further than *Madras*, and
never was at *Calcutta*, so that the voyage insured has
never commenced. As there was no responsibility or

A vessel was
insured, "at and
from *Calcutta*
to *New-York*,
with liberty to
touch at *Ma-
dras* for trade,
and to take in
part of her car-
go there." The
vessel went to
*Madras*, and
sailed thence
direct for *New-
York*, without
ever going to
*Calcutta*.
In an action
brought by the
insured, to re-
cover back the
premium, it was
held, that the
voyage insured,
did not com-
mence; and
that as the poli-
cy never attach-
ed, the insured
was entitled to
a return of pre-
mium.

ALBANY,
August, 1809.

Murray
v.
Columbian
Ins. Company.

*1 Johns. Cases,
184. Silva v.
Low. 1 Atk.
543. Park, 296.
388. 1 Mar-
shall, (2d. ed.)
185. 203.
† 2 Caines, 339.

risk on the part of the defendants, the plaintiff is entitled to have the premium returned. I do not find any adjudged case, precisely in point; but on general principles, the defendants can have no right to retain the premium.* [He was stopped by the court.]

*C. I. Bogert*, and *S. Jones*, contra. This case does not come within that of *Graves* and *Scriba* v. *The Marine Insurance Company*.† In that case there was a prior insurance, which completely covered the outward cargo, and there was no cargo taken on board at *Vera Cruz*, where the voyage in question was to commence, so that the policy did not attach. The present case is analogous to that of *Vredenbergh* v. *Gracie*.(*a*) It may be com-

---

(*a*) The case of *Vredenbergh* v. *Gracie*, was decided in *January* term, 1799, by *Lansing*, Ch. J. and *Lewis*, J. (*Benson*, J. dissenting,) and the decision seems to have turned on the evidence of the understanding and contract between the parties, as to the subject insured, and the time of the commencement of the risk. As this case has been frequently mentioned at the bar, and seems not to have been fully understood, I give the following note of it, with which I have been favoured by a friend.

A verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the following facts :

This was an action on a policy of insurance on goods, on board the brig *Nancy*, at and from any port or ports in the *West-Indies*, and at and from thence to *New-York*, " beginning the adventure on the said goods, from the *loading thereof on board in the West-Indies*," and to continue until landed in *New-York*. The goods in question were shipped on board in *New-York*, and the vessel proceeded to the *West-Indies*, without their being insured. The owner of the goods received a letter from the captain, informing him, that he had arrived at cape *Nicholas-Mole*, in *St. Domingo*, where he had disposed of a small part of his cargo, and intended to proceed to *St. Mark's* with the remainder ; which letter was shown to the underwriters, at the time of their subscribing the policy. The vessel, *with the same goods on board which she carried out*, on her passage to *St. Mark's*, was captured, and condemned by the *French*. The broker, who made the insurance, testified, that he mentioned to the underwriters, at the time of their subscribing the policy, that it was the same property, which the vessel carried out, which was to be insured. Another insurance broker deposed, that it was frequent to insure goods, which were laden on board at one place, and to begin the risk at another ; and the words, from the loading thereof on board, were always mentioned to be at the place where the risk commenced, and he never knew any controver-

pared to an insurance to several ports, where the insured may shorten the risk, by dropping a port. There were two outward ports, from either of which the voyage might commence. *Madras* was in the *iter* of the voyage insured. If the *terminus ad quem*, where there

sy arise from the goods being actually laden on board, at a different place, from the one mentioned in the policy; although the case frequently happened. It was admitted, that the plaintiff had an interest on board, and that he had abandoned in due season.

The case was argued by *Hamilton* and *Pendleton*, for the plaintiff, and by *Harison* for the defendant.

For the *defendant* it was contended, 1. That this insurance was on the homeward voyage; and that as the vessel, at the time of capture, had on board the outward bound cargo, and as the outward risk did not terminate until the goods were landed, it was clear the risk on this policy, had never commenced, and therefore the plaintiff could not recover for the loss, but was entitled only to a return of premium.

2. That the words of the policy were conclusive against the plaintiff. They were expressly on goods *to be laden on board in the West-Indies :* and the goods in question were laden on board in *New-York.* There would be a much greater risk on goods that had been a considerable time on board, than on those, which had been recently shipped, especially, where the articles were of a perishable nature. It was also contended, that the testimony of the brokers ought to be rejected, because it was admitting *parol* evidence, to vary a written contract; and that the case referred to by *Holt*, Ch. J. in *Bates v. Grabham*, (*Salk.* 444.) to prove that a policy in writing might be altered, on parol evidence, was an authority to the contrary. It was the case of *Kaines v. Knightly*, (*Skin.* 54.)

For the *plaintiff*, it was contended, that by the terms of the policy, the risk commenced immediately on the arrival of the vessel in the *West-Indies.* The words *at and from* mean immediately at and from.* This was clearly the intention of the parties here, for there was no outward insurance, which was a fact known to the underwriters. The words, "*beginning the adventure from the loading thereof on board*," were introduced into *English*, and thence into *American* policies of insurance, to exclude the risks, while the goods were going from the shore to the vessels, in boats. In most other parts of *Europe*, the policies were different, and the insurers were liable for such losses.

The sense and even literal meaning of the words, import no more than "from the time of the goods being on board," referring to the *time* of the commencement of the risk, rather than the place. It is of no importance to the underwriter, where the goods were actually laden on board; they are at his risk only from the time of their being actually on board, at the place men-

* 1 *Atkyns*, 545. 1 *Bl. Rep.* 417. *Camden v. Cowley.*

ALBANY,
August, 1809.

Murray
v.
Columbian
Ins. Company.

\* *Delany* v.
*Stoddart,* 1
*Term Rep.* 26.
† *Hodgson* v.
*Richardson,* 1
*Bl. Rep.* 405.

are several ports, may be varied; for the same reason, the *terminus a quo* may be changed, where two ports are named, if the *iter* is not thereby changed. The insured had a right to elect to commence the voyage, either at *Calcutta* or *Madras*. Though he could not go first to *Madras*, and then to *Calcutta*, he might come home direct from *Madras*, for it shortened the voyage, and

tioned in the policy, as the beginning of the adventure.\* If there was a fraudulent concealment, or, the goods had been long on board, and were of a perishable nature, it would be a different case.†

LEWIS, J. The objection to the recovery in this case is, that the vessel left a port in the *West-Indies*, before she had discharged her outward cargo, and was captured while going from thence to another island, and that, therefore, the insuarnce on the outward voyage still continued, for there could not be two insurances for the same goods.

It is admitted, that there cannot be a double insurance; but it does not appear, that there was any insurance on the outward voyage. The principle of the *English* law, that the insurance on the outward bound cargo, continues, until the goods are landed, most probably depends on the language of the *English* policies, which are expressed in that manner.

The first adjudication on the subject, was in the reign of *James* II. and it does not appear what was the language of the policy. It might have been in the modern form. But it is not, in my opinion, necessary, in this case, to decide what would be the construction on a policy in which that clause was omitted. It appears by the testimony of the broker, that the underwriters were informed where the vessel then was, and it was clearly the intention of the parties to insure her on a trading voyage, from port to port, and home.

This being the undertaking of the parties, it cannot be material, whether she landed her outward bound cargo, and took it again, or another cargo on board. She was in quest of a market, and the parties clearly understood that the insurance was to commence, *at farthest*, on her quitting the first port in the *West-Indies*, after the subscription of the policy. I am of opinion, therefore, that judgment ought to be entered for the plaintiffs.

LANSING, Ch. J. was of the same opinion.

BENSON, J. dissented; he was of opinion, that the insured were entitled to recover for such goods only as were actually shipped in the *West-Indies*.

RADCLIFF, J. not having heard the argument of the cause, gave no opinion.

KENT, J. having formerly been counsel in the cause, gave no opinion.

Judgment for the plaintiff.

greatly diminished the risk.* Suppose, that instead of two separate policies of insurance, on the outward and homeward voyages, there had been but one policy for the voyage round, might not the insured have dropped the port of *Calcutta*, without its being a deviation?

In the case of *Hog* and another v. *Bogle* and *Scott*,† a ship lying at *Dundee*, was insured from the *Frith of Forth*, to *Campvere*. The ship sailed from the *Frith of Tay*, and came in safety, within the *course* taken by ships going from the *Frith of Forth*, that is within two miles of the isle of *May*; and Lord *Mansfield* was of opinion, that if the ship came with safety into the *usual course* of the voyage, it was no matter from whence she came prior to that, or whether she sailed from the *Frith of Tay*, or the *Forth*. There is no reason, why a voyage may not be shortened at one end, as well as at another. The construction for which we contend, is favourable to the insurer, as it diminishes the risk, and his assent to the change is to be presumed.

*Pendleton*, in reply. The fallacy of the argument on the other side, is this, that if a vessel is permitted to touch at a port, that port makes a part of the voyage; but such permission is a mere excuse for a deviation. It is said that the voyage is shortened, but there is no evidence of that fact. The insurer had a right to calculate that the insured would not use the permission to touch at *Madras*, if the goods could be obtained at *Calcutta*, or the voyage had commenced there. Suppose the vessel had touched at the *Cape of Good Hope*, on her way home, would the policy have attached? The voyage would clearly have been shortened. The insured may stop short in the voyage, and demand a return of premium, but the voyage must have been commenced. The voyage insured in the present case, never had a beginning, and cannot, therefore, be said to have existed.

ALBANY, August, 1809.

Murray v. Columbian Ins. Company.

* 2 Johns. Re 264.
† Millar on Ins. 402.

The outward and homeward voyages are distinct, and the latter only was insured by this policy. If the vessel could have commenced her voyage at *Madras*, she might have done so, at any other place, in the track of the voyage described, though not mentioned in the policy.

In the case cited from *Millar*, the vessel was at another place, and was to come to the *Frith of Forth*, where the voyage insured was to commence, and she did actually come within the *Frith of Forth*. The reasoning of the court, in the case of *Silva* v. *Low*,* shows how much strictness is observed, as to the *identity* of the voyage insured.

* 1 *Johns. Cases,*
184.

THOMPSON, J. delivered the opinion of the court. There must, I think, be a return of premium in this case, on the ground that the policy never attached, and of course the underwriter not exposed to any risk. It is impossible to say, that a voyage from *Madras* to *New-York* is the same as a voyage from *Calcutta* to *New-York*. The parties have stipulated expressly in the policy, that the adventure is to begin, *at and from Calcutta*, and we have no right to substitute any other place. As this was an insurance to commence abroad, unless the underwriters knew something respecting the outward voyage, it would be very natural for them to require a representation, as to the situation of the ship, whether she was at *Calcutta*, or where, and when she was expected there, in order that they might judge of the risk.

In this case, the defendants being the insurers on the outward voyage, which was to terminate at *Calcutta*, wanted no information on this subject; they were possessed of all the information necessary, in order to make a calculation with respect to the risk, to which they were exposed. (1 *Bos. & Pull.* 200.) *Park*, in speaking of a risk, says, where insurance is made on the home-

ward voyage, the beginning of the adventure must always
depend upon the inclination of the insured, as *expressed*
*in the contract,* (*Park,* 23.)   In the case of *Graves* and
*Smith* v. *Marine Insurance Company,* (2 *Caines,* 342.)
Mr. Justice *Livingston,* in giving the opinion of the
court, says, when it is agreed that the risk shall com-
mence from the lading of goods *at* a particular port, this
is so far from being a nugatory provision, which we have
a right to say means nothing, that the underwriter has a
palpable interest in exacting a literal compliance, or to
consider himself exonerated. The assured having a right
to touch at *Madras,* cannot vary the case ; this is not in
the direct *iter* of the voyage from *Calcutta* to *New-York ;*
and if it was, I should not think it would be competent
for the assured to select, at his pleasure, any point of the
*iter,* and say the voyage insured shall commence there.
Whether the risk was increased or diminished by the
ship's not going to *Calcutta,* may be uncertain ; it is
enough, that the parties have, by their contract, designa-
ted that as the place where the risk is to commence, and
it is not competent for the court to substitute any other
in its stead.   The *termini* of the voyage, afford the
surest criterion, by which to determine its identity.
(1 *Johns. Cas.* 197. and cases there cited. 4 *East,* 130.)

    The case of *Hog* and *Kinlook* v. *Bogle* and *Scott,*
cited by the defendant's counsel from *Millar,* (402.) has
no application, even if we admit the accuracy of the case.
The ship, there, was insured from the *Frith of Forth, to*
*Campvere,* and she sailed from *Dundee* to the *Frith of*
*Forth,* or within the precincts of the *Frith of Forth,* and
then pursued her voyage ; she accordingly came to the
place of departure mentioned in the policy, and from that
time the policy may well be said to have attached.   To
make the present case analogous, the policy ought to
have been from the *Cape of Good Hope* to *New-York ;* and

then, perhaps, the policy would have attached on that part of the homeward voyage.

The opinion of the court, therefore, is, that the plaintiff is entitled to judgment.

Judgment for the plaintiff.