## FILLEY *v.* POPE & Another.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF MISSOURI.

Argued April 6, 7, 1885.—Decided October 26, 1885.

In a mercantile contract, a statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, or condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract.

Under a contract for the sale of "500 tons No. 1 Shott's (Scotch) pig iron, at $26 per ton cash in bond at New Orleans; shipment from Glasgow as soon as possible; delivery and sale subject to ocean risks;" shipment from Glasgow is a material part of the contract; and the buyer may refuse to accept such iron shipped as soon as possible from Leith, and arriving at New Orleans earlier than it would have arrived by the first ship that could have been obtained from Glasgow.

This action was brought by Thomas J. Pope and James E. Pope, citizens of New York, and partners under the name of Thomas J. Pope & Brother, against Oliver B. Filley, a citizen of Missouri.

The petition alleged that on February 20, 1880, the defendant bargained for and bought of the plaintiffs and they sold to him 500 tons of number one Shott's (Scotch) pig iron, at the price of $26 per ton, to be paid in cash by the defendant upon the delivery to him of the iron in bond at New Orleans; the iron to be shipped from Glasgow, Scotland, as soon as possible, and the delivery and sale to be subject to ocean risks; and the defendant agreed to accept the iron as aforesaid, and to pay the plaintiffs therefor the sum of $13,000; and that the particulars of the sale and agreements were set forth in a note and memorandum thereof, signed by the defendant, as follows:

" St. Louis, February 20, 1880. Thomas J. Pope & Bro., New York: Have sold for your account to Mr. O. B. Filley, St. Louis, 500 tons No. 1 Shott's (Scotch) pig iron, at $26 per ton cash in bond at New Orleans. Shipment from Glasgow as soon as possible. Delivery and sale subject to ocean risks.

"Very truly,

"WILLARD & COMBS."

Across the face of this was written: "Accepted, O. B. Filley."

The petition further alleged that afterwards, and as soon as possible, the plaintiffs caused the iron to be shipped from Glasgow to New Orleans; that upon its arrival at New Orleans, on May 26, 1880, they offered to deliver it to the defendant in bond at that port, and requested him to receive and pay for it, but he refused to do so, and the plaintiffs were forced to sell it at a loss.

The defendant, in his answer, admitted the contract and his refusal to accept the iron; denied the other allegations of the petition; and alleged, as the ground of his refusal, and as a defence to the action, that the plaintiffs failed to ship the iron from Glasgow as soon as possible after the date of the contract. The plaintiffs filed a replication, denying all new matter in the answer.

The testimony of the witnesses called by the plaintiffs at the trial tended to prove the following facts: Immediately after making this contract, the plaintiffs by telegraph bought the iron of John Anderson of Glasgow, and requested him to ship it to New Orleans. The iron was then at the works of the Shott's Iron Company in Scotland, equidistant and equally accessible by railway from the ports of Glasgow on the west coast, and of Leith on the east coast; and such iron was sometimes shipped from Glasgow, and sometimes from Leith. Anderson at once made diligent inquiry and efforts to secure transportation from Glasgow, and from Leith, and from other Scotch ports, to New Orleans, but, owing to the great scarcity of ships at that time, could only secure one vessel, the barque Alpha, which was then discharging her cargo at Leith. This vessel he chartered on February 23, 1880, three days after the contract in question was made at St. Louis. No vessel or transportation could be obtained from Glasgow to New Orleans then, or for weeks afterwards. The iron was sent down from the works of the Shott's Iron Company to Leith as fast as the barque could receive it. With all speed, she discharged her cargo, took in the iron, and sailed from Leith for New Orleans, where she arrived about May 26. The distance by sea was greater from Leith to New Orleans than from Glasgow to New Orleans. If the Alpha had come round to Glasgow

and shipped the iron there, it would have taken from six to twenty-six days, according to the winds, and she would have had to take in ballast at Leith and discharge it at Glasgow, involving considerable delay and expense.

The court instructed the jury that the provision of the contract that the iron was to be shipped from Glasgow was not a material provision of the contract, so far as this controversy was concerned; that the purpose of the contract was the sale by the plaintiffs to the defendant of a certain quantity of iron, to be delivered in a certain time at a certain place, and the fact that it was shipped from Leith instead of Glasgow was not material to the rights of the parties in this case, if the other provisions of the contract were complied with; and that if the jury found that it was impossible for the plaintiffs to obtain a vessel from Glasgow, and that it was practicable to obtain one from Leith, and that shipment from Leith was a more expeditious way of getting the iron to New Orleans than waiting for a vessel from Glasgow would have been, then the plaintiffs were justified in shipping the iron from Leith instead of from Glasgow. 3 McCrary, 190.

The defendant excepted to the admission of evidence relating to the shipment from Leith, and to the instruction to the jury, and, after verdict and judgment for the plaintiffs in the sum of $6,155, sued out this writ of error.

*Mr. Henry Hitchcock*, for plaintiff in error, cited to the point decided in the case, *Jones* v. *United States*, 96 U. S. 24; *Slater* v. *Emerson*, 19 How. 224; *Gouverneur* v. *Tillotson*, 3 Edw. (N. Y.) Ch. 348; *Smoot's Case*, 15 Wall. 46; Story on Contracts, §§ 47, 587; *Dermott* v. *Jones*, 2 Wall. 1; Benjamin on Sales; *Milldam Foundery* v. *Hovey*, 21 Pick. 417; *Oakley* v. *Morton*, 11 N. Y. 25; *Harmony* v. *Bingham*, 12 N. Y. 99; *Eddy* v. *Clement*, 38 Vermont, 486; *Bacon* v. *Cobb*, 45 Ill. 47; *School District No. 1* v. *Dauchy*, 25 Conn. 530; *Bettini* v. *Gye*, 1 Q. B. D. 183; *Kearon* v. *Pearson*, 7 H. & N. 386; *Jones* v. *St. John's College*, L. R. 6 Q. B. 115; *Cadwell* v. *Blake*, 6 Gray, 402; *Bowes* v. *Shand*, 2 App. Cas. 455, 473; *Bank of Columbia* v. *Hagner*, 1 Pet. 454; *Roberts* v. *Brett*,

11 H. L. Cas. 337; *Cutter* v. *Powell*, as reported in 2 Smith Lead. Cas. 1, and notes; *Lowber* v. *Bangs*, 2 Wall. 728; *Lovatt* v. *Hamilton*, 5 M. & W. 639; *Johnson* v. *McDonald*, 9 M. & W. 600; *Busk* v. *Spence*, 4 Campb. 329; *Davison* v. *Von Lingen*, 113 U. S. 40; May on Insurance, §§ 72, 80.

*Mr. Edward Cunningham, Jr.*, for defendants in error, argued to the same point.—This question is to be determined by the intention and meaning of the parties as it appears on the instrument, and by the application of common sense to this particular case. When such intention is once discovered, all technical forms of expression must give way. *Lowber* v. *Bangs*, 2 Wall. 728; *Tileston* v. *Newell*, 13 Mass. 406; *Todd* v. *Summers*, 2 Grattan, 167. When mutual covenants go to the whole consideration of the contract, on both sides, they are mutual conditions, the one precedent of the other: but unless the non-performance alleged in breach of a contract goes to the whole root and consideration of it, the covenant broken is not to be considered a condition precedent, but as a distinct, independent covenant, for the breach of which the party injured may be compensated in damages. *Davidson* v. *Gwynne*, 12 East, 381; *Boone* v. *Eyre*, 1 H. Bl. 273; *Lowber* v. *Bangs*, 2 Wall. 728. Shipment from Glasgow is not a condition precedent here. The court will look at the whole contract and see whether this particular stipulation goes to the root of the matter, so that a failure to perform it would render the performance of the rest of the contract by the plaintiffs a thing different in substance from what the defendant has stipulated for; or whether at most it merely partially affects it, and may be compensated for in damages. *Bettini* v. *Gye*, 1 Q. B. D. 183; *Graves* v. *Legg*, 9 Ex. 707. This is a contract of sale. Its essential parts are those that define, first: the contracting parties—who are Thomas J. Pope & Bro. of the one part, and O. B. Filley of the other; second: the thing sold, viz.: 500 tons of No. 1 Shott's ("Scotch") pig iron; third: the price to be paid, viz.: $26 per ton; fourth: the time or mode of payment, which is cash; fifth: the place and mode of delivery, viz.: New Orleans and in bond; and sixth: the time of delivery.

On the other hand, there is nothing in the nature of the case or in the conduct of the parties to indicate importance or supposed importance of shipment from Glasgow. An explanation of how the words "from Glasgow" came to be used, is suggested by the testimony of witnesses, who state that the Shott's Iron Works, where this iron was, are equidistant from the ports of Glasgow and of Leith, and that iron from these works is shipped sometimes from Glasgow and sometimes from Leith.

The buyer here, not having a day set for the delivery of his iron, but being obliged to rely on its starting on its way as soon as possible, would naturally wish to have the quarter whence it must come, stated; and so these words, "from Glasgow," may have been inserted merely to designate the vicinity whence the iron would be brought. In such case these are merely words of explanation of the provision for shipment as soon as possible, and state an immaterial circumstance which is not to be understood or construed as a stipulation or warranty, or condition rendering the whole contract dependent on that circumstance. *Manly* v. *United Ins. Co.*, 9 Mass. 85. There being no question that the time of shipment was considered and intended by the parties to be of the essence of the contract, an effort to give the words "shipment from Glasgow" the character of a condition precedent brings such condition into conflict with the provision for shipment "as soon as possible;" for shipment from Glasgow turned out not to be consistent with shipment soon as possible. Which of these clauses then is the principal, or controlling clause of the disputed sentence? To which must effect be given when they become repugnant—shipment soon as possible, or shipment from Glasgow? The apparent purpose and intent of the parties, the object which the court can gather from the whole contract and from the circumstances and from the conduct of the parties to have been in their minds, must determine, and not the mere structure of this one sentence. So that if the materiality and importance of the provisions of one clause are obvious, from the circumstances of the case, from the other provisions of the contract and from the conduct of the parties, while the provisions of the repugnant clause seem unimportant

from all these stand-points, the former clause and not the latter must control. Where a clause in a contract has been held to be a condition precedent, it has appeared that its provisions were material from a practical point of view, and such as may reasonably be supposed to have been the consideration for the whole contract, operating upon the parties actually, so that in their view, at the time of entering into the contract, a failure to perform such provisions would render the performance of the rest of the contract a thing different in substance from what was stipulated for. *Bettini* v. *Gye*, 1 Q. B. D. 183; *Lowber* v. *Bangs*, 2 Wall. 728.

The case at bar is distinguishable from the case of *Bowes* v. *Shand*, 2 App. Cas. 455, cited by plaintiff in error. That was a suit upon two contracts identical except as to price; and embodied in a broker's "sold notes" addressed to Shand and others, the plaintiffs. These notes are not fully recited in the report of the case, but the Lord Chancellor in his opinion recites so much of one of them as was considered material to the issue, as follows: "We have this day sold for your account to Bowes, Martin & Kent, the following: Madras rice, to be shipped at Madras or coast for this port, during the months of March and (or) April, 1874, about (300) three hundred tons per Rajah of Cochin, eleven and ten pence half-penny per cwt. for 'fair pinky.'" The decision of the House of Lords, reversing the unanimous decision of the Court of Appeal, went upon the theory that the thing contracted for was "Madras rice to be shipped during the months of March and (or) April," and none other; and that the words March and (or) April were an essential part of the description of that thing. Also it was held, and apparently with labor, that from the whole contract and circumstances of it the contracting parties might reasonably be supposed to have understood and intended that shipment of the rice during the months of March and (or) April would bring the cargo to London at such time as the buyers would be prepared to receive it and pay for it; but that at no other time would they be so prepared. The form of that contract suggests the first of these reasons for that decision. It runs: "We have sold . . . the following

Madras rice," .  .  . after which words immediately follow
the provisions for shipment, without which the description of
the rice would be incomplete; *i. e.,* the following Madras rice,
about (300) three hundred tons per Rajah of Cochin  .  .  .
for fair pinky." So that it might be said that without the
clause touching shipment, that contract would be incomplete
in that it would not define the thing sold. But in the case at
bar neither the first nor the second of the reasons given for the
decision in *Bowes* v. *Shand* can find place. The thing here con-
tracted for is fully and explicitly described, viz.: 500 tons No.
1 Shott's (Scotch) pig iron, and not 500 tons of pig iron to be
shipped on board, etc., at Glasgow. There is no clause or
word of this contract that points to shipment from Glasgow as
part of the description of the thing sold. Nor can it be here
said, in view of the whole contract, and the circumstances and
conduct of the contracting parties, that shipment from Glasgow
may reasonably be supposed to have been in their minds essen-
tial to the main object in view. In the case at bar the buyer
wanted his iron as soon as he could get it, and it was tendered
sooner than he could have got it had it been shipped from
Glasgow. That done, the object of the contract was attained.
Can it be imagined that the iron was of no use to him at New
Orleans because it had come there from Leith? or that he, in
entering into the contract, could have had in view any purpose
or object which had been wholly defeated by the shipment
from Leith? The sale was a sale to take effect not on board a
ship at Glasgow; nor yet at Glasgow at all. It was to take
effect only when the iron should be delivered in bond at New
Orleans. Shipment from Glasgow was stated as an immaterial
circumstance, or at most as a separate and independent stipu-
lation.

MR. JUSTICE GRAY delivered the opinion of the court. After
stating the facts in the language reported above, he continued:
The contract between these parties belongs to the same class
as that sued on in the case, just decided, of *Norrington* v.
*Wright, ante,* 188, and likewise falls within the rule that, in a
mercantile contract, a statement descriptive of the subject-

matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, or condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract. The provision in question in that case related to the time; in this, it relates to the place of shipment.

The thing sold, and described in the contract, is " 500 tons No. 1 Shott's (Scotch) pig iron," to be shipped " from Glasgow as soon as possible." It is not merely 500 tons of iron of a certain quality; nor is it such iron to be shipped as soon as possible from any Scotch port or ports; but it is iron of that quality to be shipped from the particular port of Glasgow as soon as possible. The court has neither the means, nor the right, to determine why the parties in their contract specified " shipment from Glasgow," instead of using the more general phrase "shipment from Scotland," or merely "shipment," without naming any place; but is bound to give effect to the terms which the parties have chosen for themselves. The term "shipment from Glasgow" defines an act to be done by the sellers at the outset, and a condition precedent to any liability of the buyer. The sellers do not undertake to obtain shipment, nor does the buyer agree to accept iron shipped, at any other port. The buyer takes the risk of delay in getting shipment from Glasgow, or of delay or disaster in prosecuting the voyage from Glasgow to New Orleans. But he does not take the risk of delay or of sea perils which may occur in the course of the different voyage from Leith to the same destination.

One or two illustrations may help to make this clear. If the sellers had shipped the iron by the first opportunity from Glasgow, the buyer could not have refused to accept it, even if it could have been shipped sooner from Leith. Again; the buyer would have an insurable interest in the iron during the voyage, by reason of the title which would accrue to him under the contract on arrival and delivery, and of the profits that he might make in case of a rise in the market. 3 Kent Com. 276; *French* v. *Hope Ins. Co.*, 16 Pick. 397.; *Eastern Railroad* v. *Relief Ins. Co.*, 98 Mass. 420, 423. But a policy

of insurance upon the iron for a voyage from Glasgow would not cover a voyage from Leith. *Murray* v. *Columbian Ins. Co.*, 4 Johns. 443 ; *Manly* v. *United Ins. Co.*, 9 Mass. 85.

This view of the case renders it unnecessary to consider the other questions raised at the trial and argued at the bar, and requires the

*Judgment of the Circuit Court to be reversed and the case remanded, with directions to order a new trial.*