GRAY *v.* MOORE *et al.* SAME *v.* BOHNE *et al.* SAME *v.* MASON *et al.*

(*Circuit Court, E. D. Louisiana.* January 11, 1889.)

1. SHIPPING—CARRIAGE OF GOODS—CONTRACT—TIME OF THE ESSENCE.
   When the time of the arrival of the vessel at port of shipment is specified in the contract to furnish freight, and both parties contract with regard to it, it is in the nature of a condition precedent to the enforcement of the contract by the owner.

2. SAME—CANCELLATION CLAUSE.
   Where contracts for furnishing freight are entered into in reliance upon untrue representations as to the arrival of the vessel at port of shipment, which representations amount to a warranty on the part of the ship and her agents, they cannot be enforced against the shippers, though the contracts contained no canceling clause.

In Admiralty. Appeals from district court.

Libels for breach of contracts to furnish freight. From a decree dismissing the libels, libelant appeals.

*E. D. Craig* and *E. W. Huntington*, for appellant.

*Farrar, Jonas & Kruttschnitt*, for appellees.

PARDEE, J. These cases involve substantially the same facts, and have been argued and submitted together. They are suits brought by the owner of the steam-ship City of Manchester against the several defendants for damages growing out of alleged default in the performance of contracts to furnish freight to the said steam-ship City of Manchester. The following are samples of the contracts entered into:

"GEO. GERDES, FREIGHT BROKER, 37 CARONDELET STREET.

"NEW ORLEANS, Nov. 2d, 1886.

"*Messrs. Ross, Keen & Co.*: Please enter my engagement to-day: 2,000 bales of cotton per SS. City of Manchester, here about 20th Nov., Capt. ———, for Havre, at ¾ cents per lb., with 5% primage.

"Yours, respectfully, GEO. GERDES.

"1,000 b/c Wm. Blake. 1,000, L. E. Moore & Co."

"ED. COUTURIE, FREIGHT BROKER, 26 UNION STREET. REMOVED TO 44 CARONDELET ST.

"NEW ORLEANS, Nov. 4th, 1886.

"*Messrs. Ross, Keen & Co.*: This day engaged 500 bales of cotton for SS. City of Manchester, to arrive ———, Capt. ———, for Havre, at 25-32 at 5% primage, account of L. E. Moore & Co."

"Yours, respectfully, ED. COUTURIE."

On the 23d of October, 1886, the agents of the steam-ship City of Manchester sent the following cablegram:

"OCT. 23d, 1886.

"*Mr. James Gray, Whitby:* Is Manchester coming?"

—And afterwards received the following answer:

"CARDIFF, Oct. 25th, 1886.

"*Ross, Keen & Co., New Orleans:* Manchester leaving Genoa in few days for New Orleans."

Mr. William P. Ross, of the firm of Ross, Keen & Co., who made the negotiations on the part of the steam-ship City of Manchester, testifies as follows:

"*Question.* Now, it is alleged on the part of the defendants that the ship did not arrive in time in order to carry out this contract, and that they were therefore released from it. *Answer.* I say at the time I made the engagements, I showed the freight brokers the copy we had received as to the position of the ship, which in the figuring had been estimated to be due about the 20th of November, and it is on that alone that we made the contracts. We did not make them for the November shipments, or with the canceling clause."

The ship did not sail from Genoa in a few days, in fact did not sail from Genoa for New Orleans until the 18th day of November,—a period of nearly four weeks; and did not arrive in New Orleans until the 6th day of December. On this showing, it seems clear that the contention of the defendants that they entered into the contracts on the faith of the representations of the agents of the ship that she would arrive about November 20th, is well founded; and that the agents so understood the matter seems clear from other telegrams sent by them to the owners, to-wit:

"NEW ORLEANS, 4th Nov., 1886.

"*Keen & Co. to James Gray, Hogan, New York:* Have engaged 1,100 at 25, but I must know her position. Have informed shippers she would be here soon after 20th, as cable of 25th stated she would leave Genoa in a few days. Can you meet Ross at Pensacola for shipping convention there 10th November? May possibly develop some business."

"NOV. 5th, 1886.

"*Mr. James Gray, Atlantic Hotel, Norfolk, Va.:* Steamer's position disappointing, but do not look for any trouble with engagements, as market firm. Think Pensacola convention worth attending."

"When time, therefore, is specified, and both parties contract with regard to it, whether it be the time at which the vessel is to be ready to receive cargo, or the day of sailing, or of arrival outwards, or the day of any other event in the voyage, the courts hold that it is in the nature of a condition precedent to the rights of the owner under the rest of the charter-party." Macl. Shipp. 372. Time and situation of a vessel are materially essential parts of the contract of charter-party or affreightment. See *Lowber* v. *Bangs,* 2 Wall. 732; *Davison* v. *Von Lingen,* 113 U. S. 50, 5 Sup. Ct. Rep. 346; *Norrington* v. *Wright,* 115 U. S. 188, 6 Sup. Ct. Rep. 12; *Filley* v. *Pope,* 115 U. S. 213, 6 Sup. Ct. Rep.

19; *Rolling-Mill Co.* v. *Rhodes*, 121 U. S. 260, 7 Sup. Ct. Rep. 882. The proctors for libelant contend that, as there was no canceling clause in the said contracts, (and on this point there is some evidence to show that the ship's agents refused to put in a canceling clause,) the contract was enforceable against the defendants at whatever date the ship might arrive. On this point it is only necessary to say that the presence or absence of a canceling clause in the contracts sued on can cut no figure; because the contracts were based upon untrue representations as to the sailing and arrival of the ship, which representations amounted to warranties on the part of the ship and her agents. It seems clear that libelant cannot recover, and judgment to that effect will be entered; costs of this and the district court to be paid by libelant.