PEACE RIVER PHOSPHATE CO. v. GRAFFLIN.

(Circuit Court, D. Maryland. November 3, 1893.)

1. CONTRACT—ACTION—DEFENSES.
Where a contract of sale provides for monthly shipments of cargoes, and a special understanding exists as to certain vessels, it is a good defense to an action thereon that the vessels did not sail at the respective times agreed.

2. SAME—SHIPMENTS UNDER—DELAY IN ARRIVAL.
Where shipments are made in due time as stipulated by the contract of sale, the shipper is not responsible for delay in the arrival.

3. SAME—PERFORMANCE.
Where by a contract for the sale of phosphate rock of a certain quality, to be delivered in Baltimore by vessels, the quantity to be paid for to be determined by the output there, the cargoes, both as to quantity and quality, are at the seller's risk during the voyage, and the question of compliance with the contract as to quality is to be determined upon tender of delivery, and not when the shipment is made.

4. SAME—FAILURE TO DELIVER MATERIAL—MEASURE OF DAMAGES.
Where a contract for the delivery of phosphate rock is without special agreement as to damages for its breach, and there are no special circumstances indicating the contemplation or mutual understanding of the parties, the amount of damages recoverable for failure to supply the rock as agreed is the difference between the contract price and the market price at the time and place of delivery, and not for loss of profits, or for expenses entailed by lessening of business.

At Law. Action by the Peace River Phosphate Company against George W. Grafflin for breach of a contract for the sale and delivery of phosphate rock. Plaintiff demurs to pleas of defendant, and excepts to defendant's bill of particulars of damages claimed in recoupment. Demurrer sustained in part and overruled in part. Exceptions to bill of particulars sustained.

Edgar H. Gans and Beverly W. Mister, for complainant.

Thomas Lanahan and Frank Gosnell, for respondent.

MORRIS, District Judge. The plaintiff, by the sixth and seventh counts of its declaration, declares upon a contract of sale of phosphate rock by the plaintiff to the defendant. The legal effect of the contract, as understood by the plaintiff, is set out in the declaration, but at the argument of the demurrer the contract itself was produced, that the court might construe it. It is as follows:

"Baltimore, Md., Oct. 20, 1891.

"Sold to George W. Grafflin, Esq., Baltimore, Md., for account the Peace River Phosphate Company, New York, about twelve thousand tons of Peace River Phosphate Rock, at eight dollars per ton delivered alongside buyer's wharf, Baltimore, on a basis of 60 per cent. bone phosphate of lime, not over 2 per cent. moisture, Dr. Gascoyne's test. Proportionate allowance for any deficiency; no charge for excess. Shipments to be made as nearly as possible monthly from January, 1892, to January, 1893. Sizes of cargo at seller's option, to conform to vessels procured by sellers. Terms: Cash for freight on arrival of cargoes, and one-half net amount of invoices by sight drafts against documents; balance payable within thirty days. Buyer to furnish sellers with acceptable sworn weigher's certificate of output weights free of expense. Buyers and sellers not subject to any contingencies beyond their control.

"[Signed]                                        "A. L. Taveau & Co.

"[Indorsed:] Accepted, Oct. 22, '91.              G. W. Grafflin."

The declaration alleges that, at sundry times during the year 1892, the plaintiff, in compliance with the contract, shipped cargoes of phosphate rock to the defendant at Baltimore, from Punto Gordo, Fla., which the defendant received and paid for, except that in the fall and winter of 1892, with full knowledge of defendant, three vessels were dispatched to him which he did not pay for. That the cargo of the Agnes Manning he accepted, but paid only a draft for one-half of the invoice price of the cargo, and as to the cargoes of the other two vessels, viz. the Alice and the William E. Downes, he refused to receive or pay for them at all. In the seventh count it is further alleged that the cargoes were of the quality and dryness mentioned in the contract, and that, after notice of the chartering of the vessels to sail from Punto Gordo, the defendant agreed to accept and pay for these cargoes at the prices mentioned in the contract.

The pleas which are demurred to set up as a defense that the Alice and the William E. Downes did not sail from Punto Gordo at the respective times agreed upon between the plaintiff and the defendant; that the said cargoes were not tendered alongside defendant's wharf in Baltimore within the respective times agreed upon; that the cargoes were not, when tendered at defendant's wharf, of the quality contracted for.

The contract stipulates that the shipments are to be made as nearly as possible monthly during the year, and the declaration alleges that there was a special understanding with respect to the shipments by the Alice and the William E. Downes. In such contracts the time of shipment is material, and a plea asserting that the vessels did not sail at the respective times agreed upon is, in my judgment, a good plea. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. Rep. 12; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. Rep. 19; Pope v. Allis, 115 U. S. 371, 6 Sup. Ct. Rep. 69; Salmon v. Boykin, 66 Md. 541, 7 Atl. Rep. 701. The demurrer to the third plea is overruled.

The fourth plea, which sets up that the cargoes were not tendered alongside defendant's wharf in Baltimore within the respective times agreed upon, does not, as it appears to me, answer anything in the contract or the declaration. The contract contains nothing as to when the delivery is to be made, but only as to the time of shipment; and the special agreement alleged in the declaration alleges an agreement with respect to the chartering and sailing of the two vessels mentioned, and not as to their arrival. It would appear, therefore, that if the shipments were made in due time, as stipulated by contract or by special agreement, the plaintiff was not responsible for delay in their arrival. The demurrer to the fourth plea is sustained.

The fifth and sixth pleas set up that the cargoes of the Alice and the William E. Downes were not, when tendered alongside defendant's wharf in Baltimore, of the quality called for by the contract. These pleas involve the question, at whose risk were the cargoes during the voyage? The contract price per ton was for phosphate rock delivered in Baltimore, and the number of tons to be paid for was to

be determined by the output there. If any part of the cargo was lost on the voyage, the defendant could not be required to pay for it. Not until it was tendered at defendant's wharf, so far as the contract discloses, could the defendant inspect and ascertain if the quality was as contracted for. It seems to me, therefore, a reasonable construction of the contract that the cargoes, as to the quality as well as to quantity, were at the plaintiff's risk during the voyage, and that the question as to quality is whether the phosphate rock complied with the contract at the place where it was tendered to the defendant, and not when placed on board the vessels. The demurrer to the third, fifth, and sixth pleas is overruled.

The defendant's seventh plea set up that by the plaintiff's failure to fulfill the contract the defendant was greatly damaged in his business, and claims the right to recoup his damages from the plaintiff's demand. Upon demand for a bill of particulars of his damage the defendant filed a statement claiming that by plaintiff's failure to supply phosphate rock according to the contract the product of his factory had been during six weeks lessened 3,000 tons, and that the factory expenses continued as usual, and that the useless expense and the profit on what he might have manufactured amounted to $7,000. That this deficiency of production necessitated during the next busy season extra labor, costing nearly $3,000, and that his total claim of loss was nearly $10,000. The contract is an ordinary commercial contract for the sale and delivery of a commodity to be supplied during the period of a year. Nothing is said in the contract as to what use the defendant intended to make of it, whether to sell again or to use in manufacture. There are no special circumstances stated in the contract, or alleged in any of the pleadings, which indicate that it was within the contemplation of the parties, or mutually understood in making the contract, that the plaintiff was to make good any loss of profits or lessening of business which defendant might suffer by breach of the contract. The losses claimed are, in my opinion, too remote and speculative. The direct and immediate damages resulting from breach of such a contract would ordinarily be the difference between the contract price and the market price at the time and place of delivery. Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. Rep. 500. I think, therefore, that the exception to the sufficiency of the bill of particulars of defendant's claim of damage must be sustained.