## ERIE FOOD PRODUCTS CO. v. INTEROCEAN MERCANTILE CORPORATION.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1924.)

No. 3940.

1. **Trial ⬡═253(5)—Court held not to have erred in limiting jury to specific issues of fact.**

   In action for damages for breach of contract to purchase sugar shipped from Java, where there was no guaranty at any time of delivery, *held*, that court did not err to prejudice of defendant in limiting jury to two issues, as to delivery within reasonable time and legal tender of cargo.

2. **Sales ⬡═83—Duty of seller to ship from Java on certain date on ships reasonably expected to make trip in ordinary time.**

   Under contract to ship sugar from Java between certain dates, *held*, that only obligation on part of seller in reference to transportation of sugar was to ship between dates specified by a ship reputed and believed to be seaworthy, traveling over usual course, and reasonably expected to make trip in ordinary time, if not delayed by accident or causes within meaning of term "force majeure."

3. **Sales ⬡═81(2)—Delivery to be made within reasonable time, where none specified.**

   Where a contract for sale of property is silent as to time element, law will imply that delivery is to be made within reasonable time.

4. **Sales ⬡═81(2)—Rule as to delivery within reasonable time inapplicable, where shipment to be made from foreign country.**

   Rule that delivery is to be made within reasonable time, where contract silent, does not apply where goods are to be shipped from a foreign country; buyer taking risk of delay in shipments, where made in due time and as stipulated.

5. **Appeal and error ⬡═1062(1)—Erroneous submission of issue, which should have been decided against complaining party as matter of law, not prejudicial.**

   Any error in submitting issue to jury is immaterial, where, under facts, issue should not have been submitted, but should have been decided against complaining party as matter of law.

6. **Sales ⬡═176(3)—Buyer, refusing to accept sugar on ground of prior cancellation of contract, cannot say refusal was based on insufficiency of tender.**

   Buyer, refusing to take sugar only on ground that it had canceled contract, cannot be heard to say, in action for damages by seller, that refusal to accept was based on a technical insufficiency of tender.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Action at law by the Interocean Mercantile Corporation against the Erie Food Products Company. Judgment for plaintiff and defendant brings error. Affirmed.

H. L. Peeke, of Sandusky, Ohio, and Curtis T. Johnson, of Toledo, Ohio (John F. Hertlein, of Sandusky, Ohio, on the brief), for plaintiff in error.

John B. Dempsey, of Cleveland, Ohio (Johnson & Galston and Murray, Prentice & Aldrich, all of New York City, and Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

⬡═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DONAHUE, Circuit Judge. On or about the 28th day of May, 1920, the Interocean Mercantile Corporation entered into a contract with the Erie Food Products Company for the sale and purchase of about 50 tons of Java white granulated sugar, with an allowance of 10 per cent., more or less, duty paid "ex dock" New York, landed weights, less actual tare. By the terms of this contract the sugar was sold on the basis of polarization of not less than 99 degrees; sugar to be shipped by steamer or steamers from Java between July 1 and August 31, 1920, both inclusive, sellers' option; the relative bill of lading to constitute proof thereof; in case of nonarrival or nondelivery through accident or delays to the steamer, the seller not to be held liable, but in such case shall produce the bill of lading showing shipments were made in accordance with contract; "all other force majeure conditions to apply to this contract," and all questions arising thereunder to be adjusted by arbitration in New York.

The sugar was shipped on August 31, 1920, and arrived in New York December 16th of that year. On the same day a provisional invoice was made, and on December 20th a delivery order was issued and tendered with the provisional invoice to the Erie Company on December 23d, but the Erie Company refused to accept delivery. On March 8, 1921, the Interocean Company brought an action against the Erie Company to recover damages for breach of contract in the sum of $19,594.05, with interest from the 23d day of December, 1920, that amount being the difference between the contract price and the market price of the sugar on the day delivery was tendered. To the petition of the plaintiff the Erie Company filed an amended answer containing six separate defenses. Issue was joined by reply, which in substance denied generally the averments in the several defenses pleaded in the amended answer.

Upon trial of the cause it appearing that there was no conflict in the evidence as to the market value of the sugar on December 23, 1920, the court limited the inquiry of the jury to two issues of fact: First. Did the plaintiff fail to make delivery of this sugar within a reasonable time? Second. Did the plaintiff through its officers or its duly authorized agent fail to make a lawful tender of this cargo of sugar to the defendant? Upon these issues of fact the jury found for the plaintiff, and assessed its damages in the amount claimed in the petition, and judgment was entered accordingly. Upon a careful examination of the record and supplemental record, it is clear that the trial court did not err to the prejudice of the plaintiff in error in limiting the jury to these two specific issues of fact.

[1] This contract does not guarantee any time of delivery, nor does it contemplate delivery for any particular market. On the contrary it specifically provides that "this sugar shall be shipped by steamer or steamers from Java at any time between July 1, 1920, and August 31, 1920, both inclusive, sellers' option," delivery to be made immediately upon being unloaded on docks. That shipment was made on August 31, 1920, appears by the relative bill of lading, which the contract provides "shall constitute proof thereof."

In Bradlee & McIntosh Co. v. Frey & Sons, Inc. (C. C. A.) 280 Fed. 375, the contract materially differs from the contract in suit, in

that it provides in addition to date of shipment "expected to arrive in New York June and July." The court held that under the terms of this contract the plaintiff did not guarantee delivery at any specific time, but it did give the defendant assurance against indefinite delay, and for this reason it was the duty of the seller, not only to ship the sugar at the time specified in the contract, but also to ship the same by such vessels and route as would produce in the mind of the seller a reasonable expectation that it would reach New York in July. Instead of doing this, the seller shipped by the Glenade from Hongkong to London. In London the sugar was transhipped to New York. There was also evidence in that case tending to prove that according to the custom and understanding of the trade the contract between plaintiff and defendant meant a direct voyage without transhipment. Upon this state of the proof the court held that it was not error to submit to the jury the question of whether the sugar was shipped in such a vessel and by such a route that the seller had a reasonable expectation of arrival in New York in July.

[2] Under the express terms of this written contract the only obligation on the part of the seller in reference to the transit of this sugar was, at least in a case where, as here, there is no claim of anything more then mere delay, to ship the same from Java on or before the 31st day of August, 1920, by a steamer or steamers reputed and believed to be seaworthy, traveling over the usual course to New York, and reasonably expected by seller to make the trip in the usual and ordinary time, if not delayed by accident or causes that come within the meaning of the term "force majeure," as used in this contract. Harrison v. Fortlage, 161 U. S. 57, 16 Sup. Ct. 488, 40 L. Ed. 616; Filley v. Pope, 155 U. S. 213, 220, 6 Sup. Ct. 19, 29 L. Ed. 372; Potash v. Reach (C. C. A.) 272 Fed. 658; Phosphate Co. v. Grafflin (C. C.) 58 Fed. 550.

Upon these propositions there is practically no dispute in the record. The sugar was shipped by the Interocean Company on the steamer Honolulu Maru from Java on the 31st day of August, 1920. No claim is made nor was any evidence offered tending to prove that the Honolulu Maru was not seaworthy, or that it did not travel the direct and usual route of vessels in the sugar trade from Java to New York, or that plaintiff was not justified, by facts within its knowledge and belief, in expecting this vessel to make the trip in the usual and ordinary time required by the average vessels carrying sugar from Java to New York.

[3, 4] Where a contract for the sale of property, otherwise complete upon its face, is silent as to the time element, the law will imply that delivery is to be made within a reasonable time. This principle of law, however, is general in its nature, and can have no application to this contract or to the facts of this case. In Filley v. Pope, supra, the contract provided for shipment of pig iron "from Glasgow as soon as possible." Construing this contract, the Supreme Court said:

"The buyer takes the risk of delay in getting shipment from Glasgow or of delays or disasters in prosecuting the voyage from Glasgow to New Orleans."

In Phosphate Co. v. Grafflin, supra, it was held that, where shipments were made in due time as stipulated by the contract of sale, the shipper is not responsible for delay in the arrival. In Bradley & McIntosh v. Frey & Sons, supra, it was held, in view of the fact it was written in that contract, "expected to arrive in New York June and July," that the only question was whether shipment was made in such vessel and by such route as warranted the reasonable expectation that it would reach New York in July. If it was, then the plaintiff had complied with its contract, and the defendant was bound to take the sugar at the price specified, although it did not arrive until September.

[5] It necessarily follows that the alleged errors in reference to a failure to tender delivery within a reasonable time, occasioned by delay in transportation, are wholly immaterial, for the reason that under the facts and circumstances of this case this issue should not have been submitted to the jury.

[6] Upon the question of an actual tender of this sugar to the defendant "ex dock" immediately after its arrival at New York, there is practically no conflict in the evidence. Leverich, a delivery clerk employed by the Barber Steamship Company, testified that he kept a record or desk sheets of the discharge of this cargo; that on December 23, 1920, there were about 10,000 bags of sugar from the cargo of the Honolulu Maru unloaded and weighed on the docks, and on that date he was in position to deliver to the defendant 502 bags of this sugar upon the order of the Interocean Mercantile Corporation. On the same date W. L. Fleming, representing the Interocean Mercantile Company, testified that he tendered to the plaintiff in error a delivery order properly indorsed in blank, a copy of power of attorney, and a copy of the provisional invoice.

It is claimed, however, that there is no legal evidence tending to show that this sugar was duty paid, but the evidence does show that a certified check for $9,050.25 was delivered to the cashier in the government custom house and accepted by him in payment of duty on 6,280 bags of sugar from the Honolulu Maru, and it further appears from the indorsements thereon that this check was duly paid upon presentment. This amount of sugar was largely in excess of the sugar covered by this contract. The Interocean Company was not required to pay the duty on all of this cargo in order to deliver 502 bags to the Erie Company. It was sufficient if it kept on the docks, duty paid, enough sugar to make the delivery as provided in the contract. However that may be, it appears from the record that as early as August 9, 1920, the Erie Company by letter repudiated this contract, and declared its intention of refusing to accept delivery, unless made at the market price. Mr. Fleming testified positively that on the 23d of December, 1920, he delivered to Mr. Sturtzinger, president of the Erie Company, copies of the provisional order and his power of attorney, and then tendered to him the delivery order slip, told him what it was, and said:

"This is a delivery order slip calling for this sugar on the dock and I hereby demand payment of the contract price."

He further testified that Mr. Sturtzinger had this delivery order in his hand, but when he refused to accept and pay for the sugar Sturtzinger returned it to him. While Mr. Sturtzinger testified that Fleming did not actually make a tender to him of this delivery order, but only handed to him copies of power of attorney and provisional invoice, nevertheless he further testified that he then stated to Fleming "he would not accept the sugar." He further testified that he told Fleming: "We haven't any contract with them; we have canceled it." It does not appear that Mr. Sturtzinger made any objection whatever at that time to the sufficiency of the papers tendered to him or to the sufficiency of the tender made, but, on the contrary, absolutely and unconditionally refused to accept the sugar upon the claim that the Erie Company had canceled this contract. He cannot now be heard to say that his refusal to accept the sugar was based upon a technical insufficiency of the tender. Colonial Ice Cream Co. v. Interocean Mercantile Corporation, 296 Fed. 316.

For the reasons stated, the judgment of the District Court is affirmed.