## FORSYTH FURNITURE LINES, Inc., v. DRUCKMAN.

(Circuit Court of Appeals, Fourth Circuit. October 20, 1925.)

No. 2360.

Sales ⚭150(3)—Contract of sale not breached by premature shipment.

Contract for sale of furniture, providing for shipments at rate of one car a week, *held* not breached by shipment of carload a week ahead of time, where consequences of such premature shipment were separable and independent of principal provisions and purposes of contract, and entailed on buyer nothing more than a trifling loss, which was capable of exact determination in money.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; Edwin Y. Webb, Judge.

Action by the Forsyth Furniture Lines, Inc., against A. M. Druckman. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Louis M. Swink, of Winston-Salem, N. C. (Swink, Clement & Hutchins, of Winston-Salem, N. C., on the brief), for plaintiff in error.

W. M. Hendren, of Winston-Salem, N. C., and Wm. P. Bynum, of Greensboro, N. C. (Bynum, Hobgood & Alderman, of Greensboro, N. C., and Manly, Hendren & Womble, of Winston-Salem, N. C., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The Forsyth Furniture Lines, Inc., the plaintiff in error here, was plaintiff below. It sued the defendant in error, A. M. Druckman, a citizen of New York, to recover something over $40,000, the loss it said it sustained in consequence of defendant's refusal to take and pay for a large lot of furniture which it had bought from it. The parties will be referred to as the buyer and the seller, respectively.

The seller is a manufacturer of furniture at Winston-Salem, N. C.; the buyer, a jobber of furniture in New York. Early in September, 1920, the seller had on hand a large quantity of a particular design of dining room furniture which it called No. 50, Queen Anne's style. It wished to close out the entire lot and to discontinue its further manufacture. On or about September 6th, the buyer chanced to be in Winston-Salem. While there, he inspected the furniture in question, and on the succeeding Saturday, the 11th of the month, at his office in New York, in an interview with the president of the seller, entered into a written agreement to buy the specifically enumerated items, making up the entire lot, at prices which in the aggregate figured out a net total of some $103,000. The furniture was to be shipped at the rate of one car per week, to c/o Baltimore & Ohio, Twenty-Sixth Street Stores, New York City. Payments were to be made on the 10th of the month following shipments. At the same time the buyer gave the seller two shipping orders, each for a lot of the furniture which would, as the testimony showed, have made a load for a furniture car 50 feet long. One of these orders was to be shipped "at once" and the other one week after the first. The seller shipped the first order the 22d of September, the second on the 27th, and followed with the third on the 29th. Upon learning of the third shipment within a week after the first had been made, the buyer took the position that the seller had broken the contract, and that he was released from any obligation under it. He refused to accept and pay for any of the three shipments, directed the seller to make no further deliveries, and notified it that the contract was at an end. The learned court below being of opinion that the position taken by the buyer was within his legal rights instructed the jury to return a verdict for him.

The sole question now presented is whether the action of the seller in shipping the three cars when and as it did, relieved the buyer from all obligation under the contract. We speak of the shipping of three cars. It is true that the part of the furniture sent actually went forward in five. The seller offered evidence that in the trade a car meant a 50-foot furniture car that it had on the occasion of each shipment ordered from the carrier such a car, but, the railroad not having one of them, sent in its place two smaller cars into which the seller loaded the same quantity of furniture as would have gone into one 50-foot car. It was open to the buyer to contradict this testimony and thereby to raise an issue of fact for the jury for whatever, if anything, it was legally worth. The controversy on this subject has no bearing on the propriety of instructing a verdict.

The seller says that the first order given on September 11th required a shipment "at once." Literally construed, it says that might mean that the goods should be put on the car on Monday the 13th, or within two or three days of that date. If the agreement did call for shipment at any time before the 17th and shipments were to be at the rate of one car per week, the seller had the right to expect that three cars would be shipped in September. After the contract was signed, the furniture had to be taken out of the storage portion of the seller's warehouse, each article rubbed down, and all of it crated. Moreover, cars for shipment had to be obtained from the railroad. All this took some time. The buyer does not claim that a shipment on September 22d was not "at once" within the meaning of those words as the parties used them. The buyer indeed insists that the first shipment was in time, and says that the second should not have gone forward before September 29th, instead of being made on September 27th as it was, and that there was no justification at all for making the third shipment on the 29th. We may confine our consideration to the latter contention, for if the buyer was not relieved by the shipment of the third carload on September 29th, a week ahead of time according to his calculation, obviously, he was not by the second shipment which was made only two days at the most before it should have been.

The buyer, in support of his contention that the premature shipment relieved him from all obligation, cites among other cases National Bank of Commerce v. Lamborn (C. C. A.) 2 F.(2d) 23, 36 A. L. R. 509; Bowles v. Shand, 2 App. Cases 455; Filley v. Pope, 115 U. S. 213, 6 S. Ct. 19, 29 L. Ed. 372. In them the question upon which the court was called to pass was not quite the same as that which is here presented. In none of them, to use the language of Norrington v. Wright, 115 U. S. 188–204, 6 S. Ct. 12, 29 L. Ed. 366, still more confidently relied on by the buyer, was there a contract for the sale of a specific lot of goods identified by independent circumstances, such as all those deposited in a particular warehouse as the buyer in the case at bar testified was here the fact so far as concerns all of the No. 50 Queen Anne's style belonging to the seller. In National Bank of Commerce v. Lamborn,

in Bowles v. Shand, and in Filley v. Pope, the buyer had agreed to buy goods of a particular description; a material part of such description being the termini of the intended voyage upon which the goods were to be carried or the date upon or the port from which they were to be shipped. In every one of them the goods tendered to the buyer did not correspond in one or the other of the respects mentioned to the things which he had bought. Whether they might not have served his purpose quite as well was something into which the court had no warrant to inquire. They certainly would not have been covered by any insurance he might have put upon them, or upon the profits to be realized by him from whatever interest he had in them.

In the instant case, the parties differ as to whether the contract of sale was an executed or executory one. The buyer says that the title to the furniture did not pass to him at the time the bargain was made because the seller had still to rub down the goods in order to put them in shape for delivery. We shall not go into the vast and somewhat artificial learning as to when title passes under similar circumstances. Whether in the instant case it did or did not, the goods to which the contract pertained were certain described and identified existing articles of furniture. They were not some thousands of bags of Java white sugar, or of Madras rice, or some hundreds of tons of No. 1 Shotts pig iron, which may or may not have been in existence at the time the agreement concerning them was made, or if in being, may or may not then have belonged to the seller. The contract for them could have been filled by any white Java sugar, Madras rice, or No. 1 Shotts pig iron, provided such sugar, rice, or pig iron as the case might be was shipped from and to the port designated in the contract and at the time specified therein.

Nor, so far as it appears upon this record, does this case resemble Barton v. Kane, 17 Wis. 37, 84 Am. Dec. 728, cited by the buyer, in which the seller knowingly sent more goods than had been ordered, an action which the Wisconsin court thought savored of bad faith. Certainly, no such intentional disregard of the terms of the contract is here established as would justify the court in directing on that ground a verdict for the buyer. All the testimony suggests that the seller, in view of the abundant signs of an approaching collapse in the furniture market, was nervously anxious not to be held in default because the furniture was not shipped as fast as might be required by a literal interpretation of the contract. Nor was the seller the only one to misunderstand the terms of the agreement. The buyer himself overlooked the fact that he had given a written order for a second car to be shipped a week after the first, and asserted that he was not bound to accept more than one car shipped in September. On the 29th of that month, on learning that a second car had gone forward, he notified the seller that he would not accept it unless the seller agreed that, so far as payment was concerned, it should be treated as an October and not as a September shipment. This demand the buyer explains was due to his having forgotten that he had signed an order for a second shipment to follow one week after the first. Instead of a falling, there might have been a rising, market, and the seller might have been the one who was seeking release from its obligation. To free it would require little if any greater strictness of construction of the terms of the contract than is now contended for by the buyer. The departure by the seller from the terms of the contract to the extent that they were departed from, not only entailed upon the buyer nothing more than at the most a trifling loss, but, what is much more important, the loss that was caused him is one which in dollars and cents is capable of exact determination. Assuming the buyer's construction of the bargain to be correct, he could not be made to pay for the extra car until November 10th, and he could not be required to begin paying storage thereon until the date at which that car would have reached the Baltimore & Ohio storage warehouse, had it not been shipped until October 6th, which would have been two weeks after the first car went forward or one week after the third car actually moved. The consequences of the breach alleged against the seller are separable and independent of the principal provisions and purposes of the contract. They are all trifling in themselves. They are capable of certain and definite ascertainment in money. The buyer is so situated that he has in his own hands the means of absolutely protecting himself against any loss or inconvenience resulting from the alleged departure from the terms of the contract. Under such a combination of circumstances he cannot be permitted to escape from his obligation merely because the other party, in consequence of a misunderstanding, committed what is possibly a trifling breach of one of the terms, when for it complete and accurately determined compensation can be made.

It follows that the learned court below erred in directing a verdict for the defendant, that its judgment must be reversed, and the case remanded for a new trial.

Reversed.

The late Judge WOODS agreed that the judgment in the above case should be reversed, but died before he passed upon the above opinion.