### POTTASH et al. v. HERMAN REACH & CO., Inc.

(Circuit Court of Appeals, Third Circuit. February 25, 1921. Rehearing Denied April 23, 1921.)

No. 2614.

1. Sales ⬤⇒81(1)—Contract held to bind seller to make shipment, but not delivery, within certain time.

Where a contract for the sale of goods, manifestly made with reference to special war conditions, fixed the time for shipment of the goods from a foreign country, but contained a provision, "No arrival, no sale," the seller did not undertake to make delivery, but merely agreed to ship the goods on the date specified, and the buyer cannot reject the goods for delay in delivery.

2. Sales ⬤⇒267—Contract held to take away right to reject for breach of implied warranty.

In a contract for the sale of goods to be imported, which was manifestly made in view of war conditions, a stipulation for claims for defect of quality, but providing that in no event could goods be rejected after arrival, stipulated against the law of implied warranty that the goods were merchantable, and required the buyer to accept the goods in any event and adjust his claim for damages after acceptance.

3. Sales ⬤⇒85(1)—Contract held to preclude rejection for shortage in delivery.

In a contract for the sale of goods to be imported, manifestly made with reference to war conditions, a stipulation that goods lost were not to be replaced by the plaintiff refers to the loss of any part of a consignment, as well as to the loss of the whole of it, and deprives the buyer of his right under the law merchant to reject the entire consignment for a shortage.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Herman Reach & Co., Incorporated, against Max Pottash and another, trading as Pottash Bros. Judgment for plaintiff, and defendants bring error. Affirmed.

Max Aron and B. D. Oliensis, both of Philadelphia, Pa., for plaintiffs in error.

Ralph B. Evans, of Philadelphia, Pa:, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. To contracts written with especial reference to extraordinary conditions, plaintiffs in error invoke principles of commercial law applicable to ordinary transactions of purchase and sale. But the contracts concerned no ordinary transactions. They

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

had to do with shipments of commodities from a remote part of the world under known scarcity of ships and dangers of navigation due to war and particularly to conditions abnormal even in war. No one disputes the law proposed. The only question is, whether on the court's interpretation of their engagements, the parties, knowing the law, made contracts which placed their performance outside its application. We agree with the learned trial judge that this is what they did.

The main facts of the case were these: Herman Reach & Co., Inc. (to whom we shall refer as the plaintiff), entered into two contracts with Pottash Brothers (to whom we shall refer as the defendants) for the sale of burlap by two consignments to different ports in the United States. The relevant parts of the first contract are the following:

Sale Contract

Herman Reach & Co., Inc.

Burlap & Bags

New York, March 16th, 1918.

Sold to   Pottash Bros.
Quantity   About Sixty-six thousand (66,000) Yards
           33 bales
Description   40"—10½ oz. Burlap
           April shipment from Calcutta
Position   Scheduled to sail per S/S "Suki Maru"
Price   21¢ per yard, landed Pacific Coast
Terms   Net Cash against inland bill of lading.
Remarks   (Here follow stipulations—irrelevant to the issues of the case—with reference to deliveries subject to strikes, fire, loss of goods at sea, and other unavoidable conditions, and with reference also to the sale being made subject to tariff changes and to the requirements of the War Trade Board regarding export and resale of the goods.)
         No arrival, no sale.
         If goods lost, not to be replaced by us.
         If any claims be made on account of quality, unmerchantable condition, or any other reasons, notice must be given within fourteen days of the landing of the goods, but in no event can goods be rejected after arrival.

[1] Manifestly, this was a war contract. Well knowing the difficulty of getting cargo space and thereafter of pursuing voyages without interruption in war time, it is clear from the terms of this contract that the plaintiff undertook, not to make delivery, but to make shipment within a named period. The defendants assumed the inconvenience and loss of delays, conditioned, however, on the plaintiff's timely shipment. The parties thus divided these hazards of war. The plaintiff, however, broke its contract by making a delayed shipment resulting in a corresponding delay in arrival at the port of delivery. But the defendants agreed on the arrival of the goods that they would accept them if the plaintiff would ship them at its own expense, as later it did, from the Pacific port to Goshen, Indiana, under circumstances which raised an issue of fact as to whether the defendants, agreeing to accept the goods at Goshen, Indiana, had agreed to a modification of the contract and had waived the plaintiff's breach. This issue, properly

submitted we think, has been determined by the verdict against the defendants, thus disposing of this aspect of the defense.

The other contract was in the main the same as the first, differing only in terms having to do with the quantity of goods and their price and with the date of shipment and port of delivery. This contract, bearing date April 2, 1918, was for 200 bales of burlap and called for May/June shipment from Calcutta, with option one month later, goods to be consigned to the port of New York and payment made on arrival. It also contained the stipulation that—

"If any shipments cannot be made during the month contracted for, owing to any cause beyond the seller's control, such goods shall be shipped as soon as practicable without penalty to the seller."

The evidence shows that under this contract the plaintiff shipped 25 bales of burlap on a steamer leaving Calcutta within the contract period. On arrival in New York only 19 of the 25 bales could be found. These, on being tendered, the defendants refused to accept. The defendants justified their refusal to accept the goods on three grounds long established in the lex mercatoria and embodied in the Uniform Sales Act as adopted by many states and particularly in the Sales Act of Pennsylvania (Pa. St. 1920, §§ 19649–19726).

The first ground was that of unreasonable delay in the arrival of the goods, and is based on the proposition that where a vendor undertakes to make delivery of goods at a distant place, he assumes the risks of carriage (unless otherwise provided), and, the carrier being his agent, he is responsible for delay; the second, that the goods were damaged, and is grounded on a breach of an implied warranty of their merchantable quality; and the third, that there was a shortage in the consignment, and is rested on the rule that "where the seller delivers to the buyer a quantity of goods less than the quantity he contracted to sell, the buyer may reject them." We question none of these principles of the law merchant but find them inapplicable to the second contract in suit because it is evident from its terms, the parties, in view of conditions in the war zone through which the cargo had to pass, contracted expressly to exclude their application. The sole engagement of the plaintiff with reference to the transit of the goods was that of shipment at a named place and within a named period. If the goods were lost en voyage, the loss would fall on the plaintiff alone as expressly provided by the term, "No arrival, No sale." There was no undertaking on the part of the plaintiff to make delivery; therefore there was no liability on its part for failure to deliver or for delay in delivery.

[2] Against the buyer's right to reject damaged goods when not conforming to an implied warranty of merchantable condition, the parties contracted that—

"If any claims be made on account of quality, unmerchantable condition, or other reasons, notice must be given within fourteen days of the landing of the goods, but in no event can goods be rejected after arrival"

—clearly stipulating against the law of implied warranty, providing for acceptance in any event, and arranging a method of adjusting claims for damages after acceptance.

[3] In their defense that they were not bound to accept a part consignment, due to the loss of six bales, the defendants were confronted with the stipulation that "If goods lost, not to be replaced" by the plaintiff, which, read in connection with the rest of the contract, we regard to be a stipulation not with reference to the loss of the whole consignment but with reference to loss of any part of it, abrogating the customary rule in such case.

We concur in the interpretation of the learned trial judge that the contract between these parties showed in the main that—

"The plaintiff did not agree to deliver, but to ship within the contract time. The defendants did not agree to assume the risks of loss in transit nor any responsibility until the goods arrived at the place of delivery, but if the goods were shipped in accordance with the contract, they (the defendants) did agree to accept, as and when delivered and such as were delivered."

Thus the parties split the risks of war and made a contract, which, though contrary to the law usually applicable to such transactions, was entirely valid.

This interpretation of contracts, on which the plaintiff sued to recover damages for the defendants' breach by non-payment, was properly made to the jury. The judgment entered on the verdict for the plaintiff is therefore affirmed.