## 12558.   SLATER *v.* SAVANNAH SUGAR REFINING CORPORATION.

1. Where parties have attempted to execute a contract in writing, all the provisions of the instrument will, so far as permissible and consistent with their meaning when reasonably interpreted, be given a construction that will uphold the instrument as a valid contract, rather than a construction which will render the instrument invalid.

2. Where an instrument in writing, purporting to be a bilateral contract, contains mutual promises, which without more and when taken independently of certain subsidiary provisions in the instrument would render the instrument valid as a contract, such subsidiary provisions will not, unless their terms imperatively demand it, be given a construction that will nullify and completely destroy the entire obligations of either party under the instrument and thus render the instrument lacking in mutuality and void.

DECIDED MARCH 4, 1922.

Action on contract; from Chatham superior court — Judge Meldrim. May 25, 1921.

Application for certiorari was denied by the Supreme Court.

*Travis & Travis,* for plaintiff in error.

*Hitch, Denmark & Lovett,* contra.

STEPHENS, J. The Savannah Sugar Refining Corporation brought suit against J. C. Slater to recover damages of the defendant for an alleged violation by him of the following alleged contract: " Contract No. 319. Savannah, Ga., July 10th, 1920. Sold by Savannah Sugar Refining Corporation, of Savannah, Ga. Sold to J. C. Slater, Savannah, Ga., 100 barrels standard fine granulated sugar. On the basis of twenty-two one-

half (22½) cents per pound, f. o. b. Savannah Sugar Refinery, Port Wentworth, Georgia, for fine granulated. Shipment at sellers' option between Oct. 15th and Nov. 30th. Terms: Cash before delivery less 2 %, or cash in seven days less 2 %. Terms and withdrawals subject to the approval of the seller's credit department. Payment of invoice in New York exchange or funds at par in Savannah, Jacksonville, or Atlanta. Sellers to furnish sugars packed in barrels or bags. Sellers will furnish 2, 5, 10, and 25 pound bags at the ruling differential above fine granulated basis, if desired by the trade, provided these packages are obtainable, but do not guarantee to furnish such packages. Shipping instructions and assortment to be furnished when requested by seller. Sellers will not be responsible under this contract if shipment is prevented or delayed by war conditions, strikes, labor difficulties, accidents, embargoes, regulations, or restrictions imposed by any government or governmental agencies, fire, or other cause beyond the seller's control, or if the supply of raw material of the refinery manufacturing the sugar described in this agreement shall be interrupted by any such cause. Option of routing is reserved by the sellers. Delivery will be considered complete on receipt of goods by the carrier. This purchase to be invoiced and paid for at contract price. No allowances whatever for declines in market. If shipment.is made freight prepaid, the ruling prepaid freight basis to destination in effect on date of shipment will govern. All additional import duties, excise, or other taxes hereafter levied on the raw or refined sugar necessary to fill this contract at buyer's expense in addition to price specified. Kindly sign and return one copy confirming purchase. Lamborn & Company, Savannah, Ga., brokers. This contract is accepted: (Seller) Savannah Sugar Refining Corp., Savannah, Ga., by W. Cather. This contract is accepted: (Buyer) J. C. Slater, John F. Slater."

The defendant demurred to the plaintiff's petition, one of the grounds of demurrer being that the alleged contract sued upon was " unilateral " (using that word in the sense in which it is used by the legal profession in Georgia to mean that the alleged contract lacked mutuality), and that for this reason no contract between the parties was created. The trial judge overruled the demurrer, and the defendant excepts.

The defendant contends that the alleged contract was void for

lack of mutuality, in that the plaintiff, the Savannah Sugar Refining Corporation, was not bound to perform.  The instrument sued on is an attempted agreement between two parties, who will be designated herein as the seller and the purchaser.  It stipulates that " 100 barrels standard fine granulated sugar " are " sold " by the seller to the purchaser and that " this contract is accepted " by both parties.  Such an acceptance by the parties amounts to an agreement to the terms of the instrument.  Where goods are " sold," and such sale is agreed to by both parties, there necessarily arises by implication at least an agreement by one of the parties to sell and an agreement by the other to buy.  So far this statement on its face constitutes a valid bilateral contract between the subscribing parties, by the terms of which each party is obligated to perform his respective promise, the one to sell and the other to buy.  Such a contract, without more, is of course a valid and enforceable obligation.  It might, however, in addition to the promise by one party to sell and the other party to buy, contain other terms and stipulations which might nullify and render ineffective either the promise of one party to sell or the promise of the other to buy.  Should this be the case, and, from the construction of the instrument as a whole, should it appear that either the seller or the buyer was relieved of his obligation, then the instrument would be void for lack of mutuality and unenforcible.  From an examination of the other provisions of the alleged contract we are of the opinion that such provisions, when properly construed in connection with each other and in connection with the general obligation by one of the parties to sell and the other party to buy a stipulated commodity, do not nullify the obligation of one party to sell or the other to buy.

The right of the seller to ship at its option between October 15th and November 30th, as provided in the alleged contract, certainly does not destroy the promise to sell.  The seller is still under the obligation to perform this promise but may in performing it make shipments of the commodity at any time between the dates mentioned.  The seller has an option as to the method of packing, but in exercising this option is still under the obligation to deliver the entire commodity.  The price is fixed in the instrument, but there are alternative provisions as to payment.  The payments are to be either " cash before delivery less 2%, or

cash in 7 days less 2%." Whether this option as to payment either before or after delivery is given to the seller or to the buyer, the obligation of neither the seller nor the buyer to perform the general obligation to sell or to buy is affected.

· The "terms and withdrawals [are] subject to the approval of the sellers' credit department." This provision must of course be construed in harmony with the seller's main obligation to sell, and will not be construed as nullifying that obligation, unless its clear and unambiguous terms so demand. The word "terms," in the last-quoted clause, must be construed in harmony with the immediately preceding clause relating to terms, namely, "terms: cash before delivery . . ," etc. While the "terms" are subject to the seller's credit department, the credit department must, when exercising its right to arrange terms, be governed by the other provisions in the instrument relating to and affecting the arrangement of terms, such as the provision quoted providing for cash payments before delivery or in 7 days· afterwards. Also, while the "withdrawals" are subject to the seller's credit department, the seller's right in this respect must be exercised with due regard to the other provisions of the contract, including the general provision whereby the seller is obligated to sell. The seller, being under an obligation to make shipment of the entire commodity, although the shipment is optional between certain dates, could not absolutely refuse to make shipments or deliveries to the purchaser and at the same time conform to the obligation to sell. While the "withdrawals [are] subject to the approval of the sellers' credit department," the seller is bound to allow the purchaser at some time to "withdraw" the entire quantity· "sold." Whatever ambiguity or doubt may, if any, attach to the use of the word "withdrawals," as used in this clause of the contract, the plaintiff, by way of amendment to his petition, alleged that the proper construction to be placed upon this clause is in accordance with that outlined above in this opinion. The plaintiff, of course, could·allege any meaning attached by the parties to any ambiguous phrase contained in the instrument.

Is the seller's obligation to sell nullified·or destroyed by the clause of the instrument which relieves the seller from responsibility under it if shipment is prevented by war conditions, strikes, labor difficulties, etc., or any cause beyond the seller's control?

These are all contingencies beyond the control of the seller. Neither do these provisions, when taken alone or in connection with the other provisions of the instrument, give to the seller any right, by the seller's own volition or act, to refuse to perform its obligations under the instrument. It is well settled that a subsisting obligation resting upon one of the parties to a contract may be relieved against by an after-arising contingency beyond his control. A provision to this effect does not nullify the party's obligation, and therefore could not affect the validity of the instrument or deprive it of its mutuality.

It is contended that the provision relieving the seller of responsibility under the instrument, should " the supply of raw material of the refinery manufacturing the sugar described in this agreement . . be interrupted by any such causes," nullifies the seller's obligation to sell, in that by such provision the seller may arbitrarily select a refinery unable to operate by reason of strikes, labor difficulties, etc. This provision must be given a reasonable construction and will not be construed as intending to permit the seller to perform a palpably dishonest act and perpertrate a fraud upon the purchaser by selecting a refinery crippled and incapacitated in the manner described. Besides, the happenings of any one of such contingencies as respects the particular refinery, in order to operate to relieve the seller under this clause of the instrument, must have been after the refinery had been selected. Where parties have attempted to make a contract, all the provisions of the instrument must, when permissible, be given a construction consistent with the general intention of the parties to be bound by a contractual obligation, and no provision should, when it is clearly susceptible of a construction consistent with a clearly definite obligation arising out of any other provision of the contract, be given a construction inconsistent with such clearly defined obligation.

We therefor conclude that the alleged contract is not void for want of mutuality, but is a valid and binding obligation upon both parties. The petition set out a cause of action and was not subject to general demurrer.

*Judgment affirmed. Jenkins, P. J., and Hill, J., concur.*