## 12755.　BATTLE *v.* SMITH.

The contract sued upon, under which the plaintiff sold and was to ship to the defendant at stated times certain quantities of nitrate of soda, was sufficiently definite and was not lacking in mutuality; and the plaintiff's petition as amended, which alleged a breach of the contract by refusal to furnish shipping instructions and by notification that the soda would not be accepted, stated a cause of action, and the court did not err in overruling the demurrers.

　　　　　　　　DECIDED JULY 12, 1922.

Action on contract; from Taliaferro superior court — Judge Shurley. July 15, 1921.

Application for certiorari was made to the Supreme Court.

Smith sued Battle, alleging: " 2.　That defendant is indebted to plaintiff in the sum of $8,000.00, besides interest on said sum at the rate of 7 % per annum since March 31, 1921, by reason of the facts hereinafter set out. 3.　That on July 12, 1920, plaintiff and defendant entered into a contract whereby plaintiff sold to defendant and defendant bought from plaintiff 250 tons of nitrate at and for the agreed price of $4.20 per hundred pounds, a copy of which said contract is hereto attached, marked Exhibit A, and made a part of this paragraph of this petition, and reference thereto is prayed as often as may be necessary. 4.　That according to the terms of said contract, as will appear by reference thereto, 100 tons of said nitrate of soda was to be delivered in the month

of January, 1921; 100 tons in the month of February, 1921, and 50 tons in March, 1921. 5. That prior to January, 1921, to wit, on December 31, 1920, plaintiff requested defendant to furnish shipping instructions for the hundred tons of said nitrate of soda which were to be delivered in January, 1921, and that defendant failed and refused to give shipping instructions, and informed plaintiff that he would not accept any of said soda, assigning as his only reason therefor that said contract imposed no obligation on defendant to perform same. 6. That plaintiff refused to agree to this attempted rescission of the contract on the part of defendant, but insisted on defendant's compliance with his contract, and that plaintiff continued to demand shipping instructions from defendant for the soda sold under said contract. 7. That defendant continued to refuse to furnish shipping instructions for any of the nitrate of soda which he had contracted to purchase, and notified plaintiff that he would not accept any of said soda. 8. That plaintiff has at all times since January 11, 1921, been ready, willing, and able to fully perform his part of said contract and to deliver said soda to defendant in accordance with said contract, and has insisted upon so doing, but that he has been repeatedly informed by defendant that he, the defendant, would refuse to accept said soda. 9. That the contract price for all of said soda was $4.20 per 100 pounds. 10. That the market price of said soda at the time and place of delivery was as follows: for the 100 tons to be delivered in January, 1921, $2.65 per 100 pounds; for the 100 tons to be delivered in February, 1921, $2.60 per 100 pounds; for the 50 tons to be delivered in March, 1921, $2.50 per 100 pounds. 11. That the difference between the price which defendant contracted to pay for said soda and the market price of same at the time and place of delivery was the sum of $8,000. 12. That by reason of defendant's breach of said contract as above set out, plaintiff has been injured and damaged in the sum of $8,000, said sum being the difference between the contract price of said soda and the market price at the time and place of delivery. Wherefore plaintiff prays that he have judgment against said Battle in the sum of $8,000 for his loss and damage sustained as herein set out, and further that process do issue," etc.

The contract referred to in the petition as "Exhibit A" is as follows: "Nitrate of soda contract. Atlanta, Ga. July 12, 1920.

Sold to B. L. Battle, of Sharon, Ga., by A. A. Smith, Atlanta, Ga. Quantity two hundred and fifty (250) tons of nitrate of soda. Weight: Tons to be 2000 pounds each. Port Charleston or Savannah. Expected arrival 100 tons January, 1921, 100 tons February, and 50 tons March, 1921. Price $4.50 per 100 lbs., ex vessel Savannah Charleston, in original bags as it comes from abroad. Terms cash, sight draft, bill lading attached. Analysis guaranteed 95 % nitrate of soda on analysis as furnished by the importers, with customary West Coast allowance if below the guarantee. Sale is also subject to the following express terms and conditions: Shipment by steamers or equivalent sailers expected due to arrive from the west coast of South America at the port or ports during the months herein mentioned. No arrival, no sale. Seller has option of making equivalent delivery ex vessel and / or ex store and / or shipping the nitrate for delivery under this contract to or from any port or place in the United States under the same conditions, provided that in case of change of port from that above named seller shall equalize freight to destination named by buyer on quantity so substituted. Vessel's name may be given at any time after execution of contract, seller reserving the option of substituting with or without notice another vessel or vessels in approximately similar position. Should any vessel or vessels, before or after being named by the seller, be lost, damaged, commandeered, diverted by government order, seized, captured or delayed, before or after sailing, a reasonable time is to be allowed seller to substitute another vessel, or seller may at his option cancel portion so affected. Notice of such substitution or cancellation shall be given by seller to buyer, and such right of substitution includes resubstitution without notice. In the event of any damage to, jettison, or loss of cargo of a vessel named under this contract at sea or otherwise in transit or discharging, the quantity originally named to buyer per such vessel is to be reduced in the same proportion as the entire quantity of the same grade which has been shipped by such vessel is reduced by such damage, jettison or loss, provided the balance of the cargo is brought forward to destination for seller's account; subject always to seller's right of apportionment in case of deficiency in quantity as above provided, and to seller's right to supply any deficiency from this or other vessels in approximately similar position or ex store. Nitrate to be taken by buyer at port

of arrival or place when ready for delivery, ex vessel and / or ex store as above, in single bags in customary good order. Buyer to give shipping instructions promptly after notice of time of expected arrival. Failure to give prompt shipping instructions may, at seller's option, be deemed refusal to take the nitrate. Wharfage and transfer charges, if any, at port of arrival shall be for account of buyer. Each lot shall be considered a separate sale or contract, but seller has and retains a continuous lien for the purchase price upon all nitrate of soda covered by this contract, with the right in case any lot shall not be paid for in accordance herein, to cancel this contract as to such lot or as to any other then undelivered lot or lots or portion of this contract or any other contracts outstanding with buyer above named. The nitrate delivered under this contract is to be paid for in cash, in Atlanta, Ga., in New York or Atlanta funds, in United States gold or its equivalent in currency. Buyer to pay cost of collection. Any assessment or change of export or import duty or tax on the merchandise covered by this contract, or tax on the price, or sale thereof, shall be for the account of buyer and shall be added to the purchase price. In case performance by sellers shall be delayed or rendered impossible by force majeure, including war, governmental authority, embargoes, prohibition of or restrictions upon exports or imports, civil commotion, labor difficulties, accidents, loss or damage by act of God or the elements, interference with tonnage or transportation, closing or interruption of customary short routes of transportation (including closing of the Panama canal) or any other contingencies beyond seller's control, and whether herein specifically enumerated .or not, in connection with the production, refinement or transportation of the nitrate of soda covered by this contract, expected arrival shall be extended for a period equal to the duration of the contingency and for a sufficient time thereafter in which to make shipments. Seller shall in no event be held responsible for any contingency beyond his control, whether herein specifically provided for or not. Seller has the right to insure the nitrate of soda sold under this contract, against war risk at expense of buyer. Analysis or inspection tags, if required, to be furnished by buyer, or seller has the right to furnish same at buyer's expense. No arrival, no sale. Seller not responsible for goods destroyed by fire, spontaneous combustion, storm, wreck or any other cause. Weights as

furnished at the port by sworn weigher to be binding on both buyer and seller. This writing contains the complete contract of the parties as herein set forth. No changes or modifications thereof can be made save by a writing signed by buyer and seller. Buyer B. L. Battle. Seller A. A. Smith."

Demurrers were filed, which in the brief of plaintiff in error are divided into three groups, as follows: " First group: Assuming that the contract is valid and binding, and sufficiently certain and definite to constitute the basis of an action for damages, the plaintiff has failed in his petition to allege with the clearness required by law a breach of the contract by the defendant. (1st and 7th grounds of demurrer.) Second group: The contract sued on is too vague, indefinite, and uncertain to constitute the basis of an action for damages by either party thereto. (1st, 2d, 3d, 4th, 5th, 6th, and 8th grounds of demurrer.) Third group: The contract sued on is lacking in mutuality, and is a *nudum pactum*, and is void and non-enforceable. (1st, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, and 19th grounds of demurrer.) "

Plaintiff amended his petition as follows: " 1. By striking the figures $4.50 in the 7th line of ' Exhibit A,' and inserting in lieu thereof the figures $4.20, so as to make said exhibit read with reference to the price of said nitrate of soda as follows: Price $4.20 per 100 lbs., ex vessel Savannah / Charleston in original bags as it comes from abroad. 2. Further amending said petition, plaintiff alleges that prior to January 1st, 1921, 100 tons of said nitrate of soda arrived at the ports designated in said contract, and that prior to February 1st, 1921, 100 tons of said nitrate of soda arrived at the ports designated in said contract, and that prior to March 1st, 1921, 50 tons of said nitrate of soda arrived at the ports designated in said contract, and that during each of said months plaintiff had the quantity of the nitrate of soda, specified in said contract for delivery during such month, actually on hand at the ports designated in said contract. 3. That relying on the faith of, and in pursuance of, the contract attached to plaintiff's original petition as ' Exhibit A,' plaintiff purchased a sufficient quantity of nitrate of soda to be delivered at the ports designated in said contract at the times therein specified, for the purpose of complying with said contract." To the petition as amended the defendant renewed his demurrers, and upon a hearing they were overruled, and the case is before this court on exceptions to this ruling.

*Alvin G. Golucke, Clement E. Sutton,* for plaintiff in error.

*Shackelford & Meadow, Troutman & Freeman,* contra.

BLOODWORTH, J.   (After stating the foregoing facts.)   The court did not err in overruling the demurrers to the petition as amended, because:

(*a*)   A cause of action is set out in the petition.

(*b*)   A breach of the contract by the defendant is alleged with sufficient clearness.

(*c*)   The contract is not " so vague, indefinite, and uncertain in all of its terms and conditions respecting the obligations it attempts to impose upon the respective parties thereto that it is alone incapable of constituting the basis of any action for damages for any alleged breach thereof by either party thereto."

(*d*)   The contract is not " unilateral and lacking in mutuality." *Slater* v. *Savannah Sugar Refining Corporation,* 28 *Ga. App.* 280 (110 S. E. 759).

(*e*)   The petition alleges facts sufficient to require the defendant to furnish to the plaintiff shipping directions.

(*f*)   There is no merit in any of the grounds of the demurrer not covered by the foregoing rulings.

*Judgment affirmed. Broyles, C. J., concurs. Luke, J., dissents.*

LUKE, J., dissenting. I do not concur in the judgment of affirmance in this case. I will not here copy the contract sued upon, it being copied in full in the opinion of the court.

" Where a contract is intended to bind both parties, or where it is of such form or nature that it contains mutual executory provisions, that is to say, where both parties have bound themselves or intend to bind themselves by reciprocal obligations, the doctrine as to the requirement of mutuality applies; and in such a case, if for any reason one of the parties is not bound, he cannot compel the performance by the other." 6 R. C. L. 688. Where mutual promises are relied upon as a consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties; and if one assume under such an agreement to do a special act beneficial to another, and that other, under the terms of the contract, is under no obligation to perform any act of corresponding advantage to the former, the agreement is without such consideration as will support the promise of the

party assuming to perform. *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810 (28 S. E. 998), and cases cited. Each party to the contract should, by its terms, be able to hold the other to the contract, and compel its performance if advantageous to him. See *Atlanta Buggy Co.* v. *Hess Spring & Axle Co.,* 124 *Ga.* 338 (52 S. E. 613, 4 L. R. A. (N. S.) 431), and cases cited. If the contract be such that performance by one of the parties of a promise does not confer the right to demand performance of the correlative obligation from the other, it is lacking in mutuality. See *Swindell* v. *First National Bank,* 121 *Ga.* 714 (49 S. E. 673) and cases there cited, especially the case of *McCaw Mfg. Co.* v. *Felder,* 115 *Ga.* 408, 411 (41 S. E. 664).

Measured by the foregoing standards, in my opinion the contract sued on here is not enforceable. The alleged seller under this contract has completely limited himself against any and all liability under the contract. As is provided in the contract, the seller has the option to cancel with respect to the delivery of any portion of the soda in the event a vessel be delayed before or after sailing. Separately and in two different places does the seller in this contract relieve himself of obligation to the buyer by expressly providing, "No arrival, no sale." Under the terms of the agreement the seller does not obligate himself to ship the soda sold under the contract. This case is unlike the case of Strahl *v.* Herbst, 159 N. Y. Supp. 718, and the case of Harrison *v.* Fortlage, 161 U. S. 57 (16 Sup. Ct. 488, 40 L. ed. 616), and the case of Pottash *v.* Herman Reach & Co., 272 Fed. 658. In each of those cases the contract provided for shipment, and was definite as to the months in which the goods were to be shipped, and in neither of the contracts under consideration in those cases did the seller have the option to cancel as to the delivery of any portion of the goods purchased. In all the cases relied upon by the seller under this contract the court was authorized, by the express terms of the contract, to hold that the seller had warranted shipment of the goods, or there was an express obligation that the seller would make the shipment. In the contract sued upon in the case of *Slater* v. *Savannah Refining Corporation,* 28 *Ga. App.* 280 (110 S. E. 759), it was expressly provided: "shipment at seller's option between October 15, and November 30." In that contract the seller had the option to ship between October 15 and November

30, but was still under the obligation to perform this promise. In my opinion the contract here for review is altogether one-sided, and should not be enforced. It is only in the fable that one is permitted to cool his soup and warm his hands with the same breath.