### LEVY–WARD GROCER CO. v. LAMBORN et al.

### No. 5024.

Circuit Court of Appeals, Seventh Circuit.

March 16, 1934.

Louis M. Hammerschmidt, Walter R. Arnold, and Milton A. Johnson, all of South Bend, Ind., for appellant.

A. C. B. McNevin, of New York City, and Samuel D. Miller, Sidney S. Miller, and George R. Jeffrey, all of Indianapolis, Ind.

(S. B. Pettengill, of South Bend, Ind., of counsel), for appellees.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellant appeals to reverse a judgment of the District Court against it in an action by appellees to recover for the breach of a contract of purchase of 600 bags of sugar.

Appellant is in the wholesale grocery business at South Bend, Ind., while appellees are sugar brokers and refiners, with their principal offices in New York.

On or about April 29, 1920, appellant, by its president, signed an order memorandum for the purchase of the sugar in question. After executing it, it was sent by a sugar broker to appellees, who accepted the order, a copy of which will be found in the margin.[1] It will be observed by examining the order that shipment was requested at "Seller's option August—first half September."

The parties entered into a stipulation as to the meaning of the figures, abbreviations, and phrases contained in the order, which were the established meanings in the trade throughout the United States (which stipulation will be found in the margin).[2] The parties agreed so far as they could, but did

---

[1] "Lamborn & Co.
"Sugar Brokers.

| "New York | Philadelphia | New Orleans | Savannah |
|---|---|---|---|
| | Havana | Cienfuegos | |

| New York April 29, 1920 | Brand | Buyer's No. |
|---|---|---|
| Sold to Levy-Ward Gro. Co. | Ship to . | |
| Address South Bend, Ind. | Address | |
| Seller Lamborn & Company | Shipment Requested | |
| Address New York City | Basis 25.50 per 100# less 2% ex refinery NY or Phila. | |

Routing
Terms (S/D attached to B/L on (Option of Routing
presentation with exchange reserved by Seller.

"Delivery complete on receipt of goods by carrier. This purchase to be invoiced and paid for at contract price. No allowance will be made for declines in market. Contracts and agreements contingent on strikes, accidents, fire or other delays beyond sellers control. Shipment to be made at sellers' option, subject to delay, if any.

| Quantity | Grade | Price |
|---|---|---|
| 600 Bags (or equivalent in barrels) | Fine Granulated Sugar | $25.50 per 100 less 2% ex refinery NY or Phila. |

*Shipment requested Seller's option August—first half September.*

Accepted—Levy Ward Co.        Lamborn & Co.
By C. C. Ward                 By......................
                             Member of Firm
Brokerage:—Collect.           Pay                  "

[2] " * * * The terms 'Basis 25.50 per 100# less 2% ex refinery NY or Phila.' meant that the price of the sugar specified therein was $25.50 per hundred pounds free on board cars at New York or Philadelphia refinery, and that an amount equal to 2% of said contract price of said sugar could be deducted by defendant from said contract price provided said sight draft was paid within ten days from its presentation; and that the letters 'ex' meant 'from' or 'out of'; that the term 'Price 25.50 per 100# less 2% ex refinery' had the same meaning as the similar term above referred to.

"The expression '600 Bags or equivalent in barrels' meant that said sugar should be packed in one hundred pound bags or in barrels containing approximately 350 pounds each, with additional, definite and fixed charges for sugar packed in smaller packages and additional and fixed reductions for grades of sugar inferior to said grade or fine granulated sugar.

"The expression 'Terms S/D attached to B/L

not agree upon the meaning of the words "Shipment requested," in the first part of the contract, nor the expression, "Shipment requested Seller's option August—first half September," nor the sentence, "Shipment to be made at sellers' option, subject to delay, if any."

A merchandise broker in South Bend, Charles J. Larson, among others, represented appellees. In the spring of 1920 there was a scarcity of sugar there and the price was exceedingly high. The broker at South Bend was importuned by appellant to try to secure a car of sugar for August 1st, September 1st, shipment. The broker communicated with appellees, who confirmed the carload of sugar. The agreement was reduced to writing, a printed contract form for the purchase and sale of sugar was sent by appellees to the broker, with the terms of purchase and sale filled out in typewriting. The broker took the forms to appellant, had them signed by appellant, and sent them, including the copies, signed by C. C. Ward, president of appellant, to New York, to appellees. Upon their receipt by appellees, Clarence G. Troupe, one of the partners, signed them.

When the contract is read in connection with the stipulation, it is apparent the parties had entered into a simple written contract for the purchase by appellant and the sale by appellees of 600 bags, or the equivalent in barrels, of fine granulated sugar, at $25.50 per hundred pounds, to be shipped from a refinery in New York or Philadelphia by the sellers, at any time during the month of August or first half of September, 1920, at the option of the sellers; that the sugar was to be paid for by taking up a sight draft, to which was attached the bill of lading, which would be presented to the buyer and enable it to gain possession of the sugar upon payment thereof. The contract also contained the familiar clause providing that the agreement was contingent upon strikes, accidents, fire, or other delays beyond the sellers' control, and delivery was complete on receipt of the goods by the carrier.

There was testimony before the jury that the expression, "Shipment requested Seller's option August—first half September," meant the sellers had the privilege of selecting the date or particular dates within the period of the month and a half in which to make shipment from the refinery. There was also testimony that it was customary in the trade to make sugar contracts providing for shipments within a particular period, rather than actual delivery; the latter being practically beyond the sellers' control. Also, that the reason this phrase was not added after the notation "Shipment requested" in the first part of the contract was because there was not sufficient room for it.

It is contended by appellant that because the sellers had the privilege of shipping on any one of the days during the month of August and first half of September, instead of on a certain date, and the provision, "Shipment to be made at sellers' option, subject to delay, if any," the contract was lacking in mutuality and therefore void. The question was raised before the District Court on demurrer and overruled.

In obedience to the contract, on August 3, 1920, 600 bags of sugar were loaded in NYC Railroad Car #230,099, at the refinery in Philadelphia and billed for South Bend, Ind., and a bill of lading to the order of Lamborn & Co. with "Notify Levy-Ward Gro. Co." noted thereon, was issued by the railroad company to appellees. This bill of lading was attached to a sight draft for the amount of the purchase, which appellees prepared, representing the full purchase price of the sugar, less 2 per cent., i. e., $14,994. The draft with bill of lading attached, was sent to the Union Trust Company at South Bend. It apparently arrived before the sugar, which arrived on or about the 10th or 11th of August. Appellant was notified of the arrival of the sugar August 11th, and also of the presence of the draft. The draft was presented to appellant, but never paid.

On August 11th, instead of paying the sight draft, Ward sent for the broker and told him he "could not take up the draft" and asked the latter to get some one from appellees with whom he could discuss the matter of terms. William S. Valentine, an employee of the Chicago office of appellees, went to South Bend on August 12th and with Larson, the broker, called on Ward. According to Valentine's testimony, Ward stated to him that he could not take up the draft, "There was absolutely no way of financing the car at

on presentation with exchange,' meant that upon the shipment of the said sugar by plaintiffs, they were to cause to be presented to defendant a sight draft for the agreed purchase price of the sugar specified in said contract and accompany said draft by bill of lading for said sugar attached thereto, which bill of lading was to be so issued and endorsed as to enable defendant to obtain possession of the sugar covered by said bill of lading upon arrival at its destination by presentation to the carrier of said bill of lading."

that time." This statement was practically uncontradicted by Ward, who, in a measure, corroborated it by stating that he tried to get Valentine to present a proposal to appellees to take his notes extending over a period of one to two months or possibly longer; that he was negotiating for "time and split payments." Ward admitted that on the 12th and 13th of August, "we did not have the money to take it up on that date," and did not say when he could take it up.

In the meantime Ward attempted to repudiate and deny the existence of any contract whatever, and on August 13th, telegraphed appellees that there was "some question here about order for car that is rolling please provide proof of signed contracts and signatures." Appellees wired Ward that they held appellant's signed contract, dated April 29, 1920, for the sugar, and called attention to the fact that the contract was signed by Ward himself.

After putting his various proposals to Valentine (who was a subordinate, with no authority) and pending the decision from appellees on the proposals which had been communicated to them by Valentine, Ward wrote a letter to appellees on August 14th, in which he said:

"Briefly stated the trouble in this section is that three months purchases and three months supplies have been shipped virtually in one week.

"Refiners shipping every thing on their books and making it just as difficult to handle as seems possible. And cars are coming through in eight days unheard of time for many months past.

"We hope you will not feel that the proposition which we feel obliged to put up to you through Mr. Valentine is impossible. With this time we believe the most pessimistic view of the future has been discounted and we feel we will be able to perform as we agree."

So that appellant first attempted to repudiate the contract, and then the proposal to Valentine was for the sellers to surrender possession of the sugar to it, with no other security for the purchase price than appellant's notes. Appellees refused to agree to a modification of their contract.

In the meantime the car was on the railroad tracks and demurrage charges were running. Ward testified it had not been placed upon the company's siding and he had not seen it, but appellant's answer specifically admitted that the car was placed on the company's siding during this period. He also stated he knew the car would not be permitted to remain on the railroad tracks indefinitely. After the matter had dragged along a few days to enable Ward to take up the draft, Larson, the broker, began looking for a place to store the sugar. He and Valentine were unable to find such a place in South Bend and finally, after receiving authority from appellees, withdrew the bill of lading, surrendered it to the railroad, had the car rebilled and a new bill of lading issue to move it to Logansport, a short distance from South Bend, where the sugar was stored with the Johnson Packing Company in its bonded warehouse, and the receipt therefor attached to the sight draft.

No question was ever made as to the sufficiency of the tender and delivery of the sugar. Appellant wrote a letter to appellees on September 16, which in some way has escaped the record, but appellees' answer to it pointed out that the storage of the sugar was made necessary by appellant's refusal to take and pay for it, according to the contract provisions. It did not, however, treat the sugar as having been repossessed, but merely as being held in order to enable appellant to make the payment which it had stated in Ward's conversation with Valentine it thought it could do within sixty or seventy days, and as it had said it could and would do, in its letter of August 14th. No reply was received to this letter, but a telegram was sent by appellant to appellees, stating appellant understood by the withdrawal of the car that appellees refused to deliver, and canceled the order.

On October 14th, appellees notified appellant they would sell the sugar for appellant's account and hold it liable for any difference between the contract price and the result of the sale. Following this notice, appellees offered the sugar for sale and notified appellant from time to time as to the results thereof. They disposed of it at the then market price, which was substantially lower than the contract price. The amount received was credited to appellant's account, leaving a balance due appellees of $9,779.22.

The chief ground upon which appellant asks a reversal is the claim that the contract was void for want of mutuality. Other reasons are urged and will be considered.

It is contended that the contract lacks mutuality because: (1) The sentence immediately above the designations "Quantity," "Grade," and "Price," in the contract, which reads: "Shipment to be made at sellers' op-

tion, subject to delay, if any"; (2) the presence of the words "Shipment requested" in the first part of the contract opposite "Seller Lamborn & Company" and just above the words "Basis 25.50 per 100# less 2%," etc.; and, also, (3) the words "Shipment requested Seller's option, August—first half September."

The evidence shows that the words mentioned in No. 3 (except the word "requested" which was written) were typed in the blank form by appellees in New York; that there was insufficient space in the first part of the form after the words "Shipment requested" for the words "Seller's option August—first half September," so the entire sentence, "Shipment requested Seller's option August—first half September," was typed in the second part of the contract where there was room for it. As written it was a valid and proper provision.

As to the sentence first above mentioned: It follows immediately the force majeure clause of the contract, and the whole paragraph should be read with it, and is as follows: "Delivery complete on receipt of goods by carrier. This purchase to be invoiced and paid for at contract price. No allowance will be made for decline in market. Contracts and agreements contingent on strikes, accidents, fire or other delays beyond sellers' control. Shipment to be made at sellers' option, subject to delay, if any." When so read, it is clear that appellees were endeavoring to protect themselves against any liability for delays which might occur by reason of strikes, the acts of God, or the public enemy, which, of course, is customary in such contracts and reasonable.

An illustration of one of the consequences sought to be avoided would be, if after shipping there was a possibility of delay due to a railroad strike, and the existence of the strike was known to appellees, then under this clause, if they had procured or could procure the goods to fill the order, they might ship, at their option, without incurring any liability for delay to the shipment in transit by reason of the existence of such conditions.

There is nothing in this clause which affords any basis for saying that delivery was to be optional with the sellers, except as to the precise time during the month of August and the first half of September, 1920. On the contrary, it recognizes that they were obligating themselves to make delivery. Their evident and only purpose was to relieve themselves from liability in the event that performance of the obligation was delayed or prevented by particular circumstances, in their nature beyond sellers' control. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 301, 69 L. Ed. 597; Slater v. Savannah Sugar Refining Corp., 28 Ga. App. 280, 284, 110 S. E. 759.

■ A contract will be given that construction which will make it valid and binding, instead of a construction which would make it void or unenforceable. Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940; American Sugar Refining Co. v. Newman Grocery Co., 284 F. 835 (C. C. A. 5).

■ It should be construed in favor of mutuality. 13 C. J. 539; Minn. Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529.

■ A construction which makes confused wording intelligible should be adopted. Senter v. Senter, 87 Ohio St. 377, 101 N. E. 272; Goff v. Lamborn & Co., 281 F. 613, 616 (C. C. A. 5).

The construction contended for by appellant would destroy the contract as a binding obligation, which is not permissible where there is another legitimate construction which will uphold it. La Grange Grocery Co. v. Lamborn & Co., 283 F. 869 (C. C. A. 5).

The contract in question is valid, one commonly used in the trade, and appellees were clearly obligated to deliver the sugar in question either during the month of August or in the first half of September, 1920. This option did not render the contract void for want of mutuality.

■■ On the trial appellant also contended that appellees had not adequately tendered performance; that they should have kept their tender good; and, that the facts did not establish a liability arising against it for the difference between the contract price and the resale price of the sugar, or authorize appellees to make sale in November, 1920 of said sugar for the account of appellant. These contentions do not impress us seriously for the reason that appellant, when notified of the presence at the bank, for its disposition, of the sight draft, with bill of lading attached, immediately said it could not pay the sight draft nor finance the car of sugar short of sixty or possibly seventy days.

The sight draft was due immediately upon presentation, and to meet it, it would have been required to act before the expiration of the ten days now claimed by appellant, and the 2 per cent. discount had already been allowed and deducted from the full amount due under the contract. Under these circum-

stances, it would have been unreasonable for appellees to have been required to permit the car of sugar to stand exposed on the railroad track to all of the hazards incident thereto, with demurrage charges constantly accumulating, to see if some time during the following thirty, sixty, or seventy days appellant might pay the sight draft and take up the bill of lading, withheld by appellees for the purpose of securing to them the payment of the sight draft.

Under such circumstances it was the duty of appellees to use every reasonable effort to minimize the loss which they or appellant might sustain by reason of the breach of the contract by appellant and to secure the safety of the property and to lessen the expense, for the benefit of both parties. Appellees were entirely within their rights when they had the car moved to Logansport and had the sugar stored in a bonded warehouse. The warehouse receipt therefor was then substituted at the bank to be attached to the sight draft which still remained for payment in the hands of the collecting bank.

It is complained that on the trial it was not shown the bill of lading, which was made out to Lamborn & Co., with the memorandum, "Notify Levy-Ward Gro. Co.," had been endorsed to appellant by appellees. When appellant had notified the representative of appellees that it could not take up the sight draft, Valentine, appellees' agent, asked the New York office to direct the South Bend Bank to deliver the bill of lading to him, for the purpose of having the car rebilled to Logansport for storage in a bonded warehouse.

The parties were unable to produce the original bill of lading because it had been delivered to the railroad company when the car was rebilled, and, as in the neighborhood of eleven years had elapsed between the date of the transaction and the trial, it was an impossibility to locate it to see whether or not it bore the proper indorsement. The trial court submitted the question as to the proper indorsement of the bill of lading to the jury with appropriate instructions. No complaint was made by Ward for appellant as to the insufficiency of the indorsement at the time he said he could not pay the sight draft. In addition to his conduct, there was offered in evidence the railroad company's shippers' memorandum which was made out at the same time as the original bill of lading, showing the notation, "Notify Levy-Ward Gro. Co. at South Bend, State of Ind." and the further fact that upon a surrender of the bill of lad-ing to Valentine its condition was such the railroad company accepted it and issued a new bill of lading for the movement of the car in question to Logansport. This was sufficient evidence to warrant the jury in finding that the bill of lading was in due form when attached to the sight draft.

Other questions are raised by appellant but are of a technical nature, and, if they were sustained, are not of such a character as would warrant us in reversing the judgment of the trial court. It is sufficient to say that appellees had followed and completely complied with all the requirements of the contract by them to be performed, and, when appellant failed to take up the sight draft and receive the bill of lading, it breached the contract. The only reason for appellant's default given at the time was it did not have the money but wanted time. The record shows that appellees did everything they could do for appellant without altering or modifying the contract and giving the latter actual possession of the sugar.

The court fully and with reasonable accuracy instructed the jury as to the law applicable to the case, and under the law and the facts, the jury was warranted in finding for appellees.

The judgment is affirmed.