328 F.2d 93
 TRUCK DRIVERS & HELPERS LOCAL UNION NO. 728, Affiliated with
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen & Helpers of
America, Appellant,
v.
GEORGIA HIGHWAY EXPRESS, INC., B. C. Truck Lines, Inc., and
B. C. Cartage Company, Inc., Appellees.
 No. 19902.
 United States Court of Appeals Fifth Circuit.
 Jan. 31, 1964.
 
 Edwin M. Pearce, John S. Patton, Poole, Pearce & Hall, Thomas L. Carter, Atlanta, Ga., for appellant.
 John W. Wilcox, Jr., Wilson, Branch & Barwick, Alexander E. Wilson, Jr., Atlanta, Ga., for appellees, Georgia Highway Express, Inc., B. C. Truck Lines, Inc., B. C. Cartage Company, Inc.
 Before JONES and BELL, Circuit Judges, and GROOMS, District Judge.
 GROOMS, District Judge.
 Under Count I of the complaint, appellant (plaintiff below) seeks the enforcement of an award made to twelve discharged or laid-off employees of appellees, B. C Truck Lines, Inc., and B. C. Cartage Company, Inc., by the Joint State Committee under Article X of the Southern Conference Local Freight Forwarding, Pickup and Delivery Agreement, executed by the appellant and the appellee, B. C. Truck Lines, Inc., on March 3, 1958, and alleged to be binding upon all appellees.
 Under Count II, appellant seeks an injunction requiring appellees to arbitrate grievances with respect to nine other employees of the Truck Line and the Cartage Company whose services were terminated as of January 30, 1960.
 On October 20, 1961, the trial Court overruled a motion to dismiss filed by the appellees, Truck Lines, and Georgia Highway Express, Inc., but by its order of May 24, 1962, the order on this motion was vacated and an order was entered dismissing the plaintiff's action as set forth in Count I upon the ground that it was without jurisdiction. The Court considered the motion as to Count II as one for summary judgment; and, holding that the agreement nowhere provided for compulsory arbitration, entered a summary judgment for the defendants as to that count.
 COUNT ONE.
 The learned trial Court noted that it was impossible to reconcile, on the one hand, the large number of cases following Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (which held that Section 301 did not give the federal courts jurisdiction over a suit brought by a union to enforce individual benefits due employees), and, on the other hand, those cases relied on by the appellant holding that a district court has jurisdiction to enforce the award of arbitrators. The Court also noted that the question had run a strange course in this Court and in the Supreme Court, pointing out that this Court, in Mississippi Valley Electric Company v. Local 130 of the International Brotherhood of Electrical Workers, AFL-CIO, 5 Cir., 278 F.2d 764, had followed Westinghouse, then reversed itself, 285 F.2d 229, following United Steelworkers of America v. Enterprise Wheel and Car Co., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The trial Court further observed that subsequently this Court, in International Association of Machinists v. Central Airlines, Inc., 5 Cir., 295 F.2d 209, had spelled out the legislative history of Section 301 which clearly showed that the legislative intent was to deprive the district courts of jurisdiction. The case of General Drivers, Warehousemen and Helpers v. Riss & Co., 6 Cir., 298 F.2d 341, was considered as being directly in point. Relying upon Riss, as well as upon Westinghouse and Central Airlines, the lower Court concluded that the appellant union could not recover the individual awards made to the employees, members of the union.
 However strange the course of the question involved, it had by no means run its full course at the time of the lower Court's decision of May 24, 1962.
 On December 10, 1962, the Supreme Court, in the case of Doyle Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, said:
 '* * * subsequent decisions here have removed the underpinnings of Westinghouse and its holding is no longer authoritative as a precedent.'
 After reviewing the later decisions, the Court added:
 'The concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of 301 has thus not survived.'
 On March 18, 1963, the Court reversed Riss,[1] 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918, saying:
 'If, as petitioners allege, the award of the Joint Area Cartage Committee is under the collective bargaining agreement final and binding, the District Court has jurisdiction under 301 to enforce it, notwithstanding our Westinghouse decision. See Textile Workers v. Lincoln Mills, 353 U.S. 448, 456, n. 6 (77 S.Ct. 912, 1 L.Ed.2d 972); United Steelworkers v. Pullman-Standard Car Mfg. Co., 241 F.2d 547, 551-552 (C.A.3d Cir. 1957). Plainly, this allegation cannot be rejected on the basis merely of what the present record shows. It is not enough that the word 'arbitration' does not appear in the collective bargaining agreement, for we have held that the policy of the Labor Act 'can be effectuated only if the means chosen by the parties for the settlement of their differences under a collective bargaining agreement is given full play.' United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566 (80 S.Ct. 1343, 4 L.Ed.2d 1403); cf. Retail Clerks v. Lion Dry Goods, Inc., 369 U.S. 17 (82 S.Ct. 541, 7 L.Ed.2d 503). Thus, if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under 301. And if the Joint Area Cartage Committee's award is thus enforceable, it is of course not open to the courts to reweigh the merits of the grievance. American Mfg. Co., supra (363 U.S.), at 567-568 (80 S.Ct. at 1346-1347, 4 L.Ed.2d 1403). 'Of course, if it should be decided after trial that the grievance award involved here is not final and binding under the collective bargaining agreement, no action under 301 to enforce it will lie. Then, should petitioners seek to pursue the action as a 301 suit for breach of contract, there may have to be considered questions unresolved by our prior decisions. We need not reach those questions here. But since the courts below placed so much reliance on the Westinghouse decision, we deem it appropriate to repeat our conclusion in Smith v. Evening News Assn., 371 U.S. 195, 199 (83 S.Ct. 267, 9 L.Ed.2d 246), that 'subsequent decisions have removed the underpinnings of Westinghouse and its holding is no longer authoritive as a precedent."
 On April 15, 1963, Central Airlines was likewise reversed, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67, the Court holding that the district court had jurisdiction over a nondiversity suit brought by an airline union to enforce an arbitration award of an airline system board of adjustments created under 204 (45 U.S.C.A. 184) of the Railway Labor Act.
 It need hardly be said that these later cases have swept the legal supports from the lower Court's decision as to Count One.
 By Article X of the Agreement, the parties agreed to utilize the grievance procedures created under the Southeastern Area Over-the-Road Motor Freight Agreement. By Article VIII, incorporated in Article X, the parties agreed as follows:
 'ARTICLE VIII. Grievance Machinery and Union Liability. The Unions and the Employers agree that there shall be no strikes, lockout, tie-up, or legal proceedings, without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise. Disputes shall first be taken up between the Employer and the Local Union involved. Failing adjustment by these parties, the following procedures shall then apply * * * 'Section 1(a) Where a Joint State Committee, by a majority vote, settles a dispute, no appeal may be taken to the Joint Area Committee. Such a decision will be final and binding on both parties. ' (b) * * * '(c) It is agreed that all matters pertaining to the interpretation of any provision of this Agreement may be referred at the request of any party at any time, for final decision to the Joint Area Committee after first being heard by the Joint State Committee and, in event of referral, the Joint State Committee's decision shall not become effective. ' (d) * * * '(e) * * * failure to comply with any final decision withdraws the benefits of Article VIII. * * *'
 The award was made by the Joint State Committee. Appellees insist that by their own failure to comply with the award they are released therefrom by the quoted provision of Section 1(e). If this be true, the parties have erected a device that has worked its own undoing. We agree with the lower Court that the appellees' contention calls for a strange interpretation of Section 1(e). It does not comport with basic contract law, that a party cannot urge as a defense to a suit on the contract his own noncompliance with its provisions.
 Under Section 1(e), the failure to comply with a final decision withdraws from the noncomplying party the specific benefits of Article VIII, which provides 'that there shall be no strikes, lockout, tie-up, or legal proceedings,' leaving the party in compliance a free hand to take appropriate action in those otherwise proscribed areas. It is only upon a noncompliance by one side that the other is allowed redress outside the grievance procedures. Generally, a repudiation by one party releases the other from all obligations under the contract, but by virtue of Section 1(e) the party aggrieved may elect to limit such release to the particulars provided without involving or impairing the remaining obligations of the contract.
 A contract which provides that a 'decision will be final and binding on both parties,' when rendered by a Joint State Committee and which also provides in effect that it will be binding on neither at the option of either presents such an irreconcilable inconsistency as to lead to the conclusion that no such absurd result was intended, unless it be demonstrated that the contract, when considered as a whole, is subject to no other reasonable interpretation. 17A C.J.S. Contracts 309. Section 1(e) refers only to 'Article VIII' and not to 'Article VIII, and Sections 1(a) to (e),' and when Section 1(e) is confined to that specific reference and read in relation thereto, there is no such inconsistency. Otherwise, the parties have subjected themselves to a meaningless procedure.[2]
 It is noted that under Section (c) there is an exception as to the finality of a decision of the Joint State Committee as to matters pertaining to the interpretation of provisions of the Agreement where there has been a referral to the Joint Area Committee. In such an event a decision of the former will not become effective. But where, as here, there has been no referral it is implicit from the language employed that such decision will be effective.
 Where parties have agreed to use a particular grievance procedure and have agreed to be bound once a decision is reached, they cannot escape the consequence attendant thereon by the mere fact that the word 'arbitration' does not appear in the agreement. General Drivers Union v. Riss & Co., supra.[3]
 COUNT TWO.
 Resting its ruling on Count Two, as it mainly did on Count One, on the Sixth Circuit's decision in Riss, the Court concluded that the Agreement makes arbitration elective and not compulsory.[4] The Supreme Court's decision reversing Riss points to the error of the lower Court in this case and marks the path for future consideration of Count Two by it.
 The Court erred in holding that it was without jurisdiction with respect to the action stated in Count One, in granting a Summary Judgment with respect to Count Two, and in dismissing the action.
 Reversed and remanded.
 
 
 
 [1]
 The pertinent provisions of the labor contract involved in Riss does not appear in full in the report of the case, but is stated by the Court as being in substance the same as the one under consideration
 
 
 [2]
 In Slater v. Savannah Sugar Refining Corporation, 28 Ga.App. 280, 110 S.E. 759, the Court held:
 '(Syllabus by the Court) 'Where an instrument in writing, purporting to be a bilateral contract, contains mutual promises, which without more, and when taken independently of certain subsidiary provisions in the instrument, would render the instrument valid as a contract, such subsidiary provisions will not, unless their terms imperatively demand it, be given a construction that will nullify and completely destroy the entire obligations of either party under the instrument, and thus render the instrument lacking in mutuality and void.'
 and in American Sugar Refining Co. v. Newnan Grocery Co., 5 Cir., 284 F. 835, it was said:
 'It is to be assumed that the parties intended to make a binding and enforceable contract. They were not going through the useless formality of entering into an agreement, without the intention of enforcing it if the necessity should arise.
 'A contract will be given that construction which will make it valid and binding, instead of a construction which would make it void or unenforceable. Hobbs v. McLean, 117 U.S. 567, 6 Sup.Ct. 870, 29 L.Ed. 940. Likewise a contract should be construed in favor of mutuality. 13 C.J. 539; Minn. (Minnesota) Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N.E. 774, 31 L.R.A. 529. A construction which makes confused verbiage intelligible will be adopted. Senter v. Senter, 87 Ohio St. 377, 101 N.E. 272.'
 
 
 [3]
 See Humphrey v. Moore, 84 S.Ct. 363, 372, decided by the Supreme Court on January 6, 1964, where it was said:
 'The decision of the committee, reached after proceedings adequate under the agreement, is final and binding upon the parties, just as the contract says it is. General Drivers (etc.), Union v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918.'
 
 
 [4]
 See Deaton Truck Line, Inc. v. Local Union 612, etc., 5 Cir., 314 F.2d 418, at 422, where the contract provided that if the Company and the union failed to agree, 'the dispute may be submitted to * * * arbitration and the decision of the arbiter shall be final,' and where we said:
 'Appellant argues that the use of the word 'may' in the contract prevents arbitration from being compulsory or obligatory. Clearly, however, 'may' should be construed to give either aggrieved party the option to require arbitration. United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 565, n. 1, 80 S.Ct. 1343, 4 L.Ed.2d 1403; International Association of Machinists, AFL-CIO, v. Hayes Corp., 5 Cir., 1961, 296 F.2d 238, 241, n. 6.'